**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Richard Lee RICKABAUGH,**
**Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued Oct. 28, 1997.

Filed Dec. 18, 1997.

Reargument Denied Feb. 27, 1998.

---

10. 75 Pa.C.S. § 3731(a)(1). **Driving under influence of alcohol or controlled substance**

 (a) **Offense defined.**-A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:
 (1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.

11. The Commonwealth in its brief has requested a blanket exception to the corpus delicti rule in vehicular accident cases. As we believe the historical purpose of the corpus delicti rule serves an important function in all situations where an accused may face penal sanctions based only on his own admissions connecting him to culpability we decline to create a blanket exception to such an important rule on the proffered public policy argument that such an exception would make accident investigations easier.

Ralph T. Forr, Jr., Altoona, for appellant.

Mary B. Seiverling, Deputy Attorney General, Harrisburg, for participating party.

Before POPOVICH, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

On May 2, 1996, following an extensive undercover investigation, a lengthy trial commenced against Richard Lee Rickabaugh (Appellant), a suspected drug dealer and racketeer. Originally, charges were brought against Appellant in separate County and State informations. At No. 208 of 1995, Appellant was charged by the Blair County District Attorney's Office with one count each of possession with intent to deliver cocaine, possession of cocaine and criminal conspiracy.[1] At No. 39 of 1996, Appellant was charged by the Office of the Attorney General with twelve counts of possession with intent to deliver cocaine, two counts of corrupt organizations and one count of criminal conspiracy.[2]

Pursuant to an unopposed Commonwealth motion, the cases were consolidated for trial and prosecuted jointly by the District Attorney and the Attorney General. Prior to the joinder, Appellant filed an omnibus pre-trial motion seeking, *inter alia*, suppression of an intercepted wiretap communication as well as $710.00 in marked money discovered in Appellant's front pant's pocket during the arrest which precipitated the filing of the County charges against him. Following an extensive suppression hearing, Appellant's motion was denied in full.

On May 2, 1996, the case proceeded to a jury trial which was presided over by the Honorable Hiram A. Carpenter, III. On May 31, 1996, following deliberation, the jury found Appellant guilty of the three County offenses with which he was charged, guilty of the State corrupt organizations and conspiracy charges, and guilty of five of the twelve State possession with intent to deliver cocaine charges. At this time, sentencing was deferred pending the preparation of a pre-sentence report.

On July 23, 1996, Appellant was sentenced to an aggregate term of forty to sixty-four years' imprisonment. Additionally, Appellant was ordered to pay fines in the amount of $260,300.00. On August 2, 1996, Appellant filed timely post-sentence motions requesting a modification of sentence and/or a new trial. Following extensive briefing and oral argument thereon, Appellant's motions were denied by court orders dated August 20, 1996, and January 9, 1997.

In the instant appeal, Appellant presents a plethora of issues alleging trial court as well as prosecutorial error. Initially, Appellant argues that the trial court erred in failing to grant his pretrial motion to suppress an intercepted taped communication and money found in Appellant's possession at the time of his initial arrest.

■■■ When reviewing an order denying suppression, this Court must review the record in the light most favorable to the Commonwealth, as verdict winner, and determine whether the trial court's factual findings are supported by the record. Provided that there is support in the record for the court's factual findings, this Court will not reverse the order denying suppression unless the legal conclusions drawn from those facts are

1. 35 P.S. § 780–113(a)(30), 35 P.S. § 780–113(a)(16), and 18 Pa.C.S.A. § 903, respectively.

2. 35 P.S. § 780–113(a)(30), 18 Pa.C.S.A. § 911(b)(3), (b)(4), and 18 Pa.C.S.A. § 903, respectively.

in error. *See, e.g., Commonwealth v. Jackson,* 548 Pa. 484, 486–88, 698 A.2d 571, 572 (1997); *Commonwealth v. Gelineau,* 696 A.2d 188, 191 (Pa.Super.1997).

With this standard in mind, the record reveals the following: In November of 1994, Detective Norman Young, of the Altoona Police Department, contacted Agent Randy Feathers, of the Office of the Attorney General, and advised him that a controlled purchase of cocaine was going to be made from Detective Young's informant, Crawford Witherow, to Gregory Provenzano. Witherow told Detective Young that Provenzano and Appellant were drug dealers and he agreed to wear a transmitting device during the sales transaction.

On November 24, 1994, using $750.00 in marked money, Witherow bought half of an ounce of cocaine from Provenzano which was then confiscated by the police. Although he was not present at the sale, Appellant provided Provenzano with the drugs and, subsequently, was paid the $750.00 purchase price.

Suspecting that Witherow may be a police informant, Appellant ordered Provenzano to make sure that Witherow actually had the cocaine. When confronted by Provenzano the following day, Witherow stated that his wife had mistakenly given the cocaine to a friend of hers. Stalling for time, Witherow drove Provenzano to several Blair County bars and to Witherow's home. During the course of the evening, the men drank several beers and ingested between three and one-half to six grams of cocaine.

At some point during the evening, Witherow was able to contact Detective Young and inform him that Provenzano was demanding to see the half-ounce of cocaine. After consulting with Agent Feathers, Detective Young decided to arrest Provenzano. Witherow was then instructed to tell Provenzano that he would meet Provenzano in a parking lot and show him the cocaine. After arriving at the appointed time, Provenzano was arrested while seated in the front passenger seat of Witherow's car. A subsequent search of the vehicle revealed twenty-four sealed packages of cocaine under the front passenger seat.

After being advised of his *Miranda* rights, Provenzano agreed to cooperate with the authorities. Pursuant thereto, Provenzano called Appellant and left a message on Appellant's answering machine relative to the prior cocaine sale to Witherow. Thereafter, Provenzano asked if he could return to his home to care for his wife, who was an invalid. Accompanied by Altoona Police Department Detective Robert Hainey, Provenzano returned home, bathed and medicated his wife, made a meal for her and wrote a grocery list for his son. Fearing that it might arouse suspicion, Provenzano cautioned the Detective not to stand near the front door.

Detective Hainey then informed Provenzano that the police had rented a motel room at the local Econo Lodge. In response, Provenzano stated that he would pack an overnight bag in order, once again, not to appear suspicious. As the men prepared to leave for the motel, Provenzano noticed two of Appellant's associates drive by in front of his house. Provenzano immediately stepped back inside the house, and the two exited through the rear door.

Upon arriving at the motel, Provenzano met with Blair County District Attorney William Haberstroh regarding Provenzano's willingness to permit the police to monitor and record his conversations with Appellant. After approximately one hour of discussion, after which District Attorney Haberstroh concluded that Provenzano's consent to permit the police surveillance was knowing, intelligent and voluntary, both District Attorney Haberstroh and Provenzano signed a Memorandum of Consent.

Thereafter, Provenzano received a beeper page from Appellant. After the police ensured that the recording devices were working properly, Provenzano returned Appellant's page, told Appellant that he was at the Econo Lodge and waited for Appellant's arrival. At Provenzano's suggestion, the police left the twenty-four seized packages of cocaine in the motel room.

Within an hour, Appellant and his sister-in-law, Sonya Snowberger, arrived at the motel. As soon as Appellant knocked on the motel room door, the police activated the electronic recording device.

Once inside, Appellant and Provenzano discussed whether Provenzano had seen the cocaine sold to Witherow. While not mentioning Witherow by name, Appellant repeatedly asked whether "he" brought the half-ounce of cocaine and whether Provenzano had seen "the bag." At this point, the officers entered the motel room and placed Appellant under arrest. While handcuffing Appellant, Agent Feathers noticed that there was money sticking out of Appellant's front pant's pocket. Believing it to be the same marked currency used in the Witherow sale the previous day, Agent Feathers confiscated the money.

Like Provenzano, Appellant agreed to cooperate with the ongoing police investigation. Based upon his representations, Appellant was released from custody later that evening. At some point in December of 1994, before he was taken back into custody, Appellant took Provenzano for a drive along Kettle Road, a remote road that winds through Sinking Valley near Altoona. While parked near a reservoir, Appellant told Provenzano that, on a previous occasion, another associate had disagreed with him and Appellant "hooked [him] up to the car and drug him down the Kettle on the blacktop." N.T., 5/7/96, Volume I, at 350. Additionally, Appellant offered to pay Provenzano's legal and personal expenses if Provenzano did not testify against him.

At Appellant's preliminary hearing, Provenzano refused to testify. At the subsequent suppression hearing, Provenzano testified favorably for Appellant. Specifically, Provenzano claimed that he did not voluntarily consent to the wiretap interceptions, and only acquiesced to the police demands out of fear, fatigue and intoxication.

After Provenzano confided to law enforcement personnel that he feared for his life should he testify truthfully, Appellant was charged at a separate criminal information with intimidation of a witness.[3] At trial, Provenzano testified against Appellant relative to Appellant's drug transactions as well as the threat.

With this background in mind, we review Appellant's first claim of error in which he argues that the trial court erred in denying his motion to suppress the recorded conversation between Provenzano and Appellant at the Econo Lodge Motel. More specifically, Appellant argues that, due to Provenzano's deteriorated mental and physical state, he could not knowingly and voluntarily consent to have his conversations with Appellant recorded.

■ Pursuant to the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. section 5701, *et seq.*, a party may permit governmental officials to record his or her conversations with unknowing third parties.[4] Provided that one's consent is knowing, intelligent and voluntary, such one-party consensual interceptions do not violate the state or federal prohibitions against unreasonable searches and seizures. *See, e.g., Commonwealth v. Rodriguez*, 519 Pa. 415, 416, 548 A.2d 1211, 1212 (1988).

■ As our Supreme Court has explained, "consent is not voluntary where it is

3. 18 Pa.C.S.A. § 4952.

4. The provision of the Act relied upon in the instant matter provides as follows:

It shall not be unlawful under this chapter for:

* * *

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities where:

* * *

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general desig-

nated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

18 Pa.C.S.A. § 5704(2)(ii).

the product of coercion or duress either express or implied." *Rodriguez*, 548 A.2d at 1213. In making this determination, a court must evaluate each case individually and consider whether, under the totality of the circumstances, consent was given freely and intelligently. *Id.*

■ In the instant matter, Appellant contends that Provenzano's consent was unlawfully induced because Provenzano was under the influence of narcotics and because the police informed him that if he did not cooperate he was facing a potentially long term of imprisonment.[5] After carefully reviewing the totality of the circumstances surrounding the taping, however, we find that these facts do not vitiate Provenzano's consent.

■ This Court has previously held that "intoxication by use of drugs or alcohol was insufficient, in and of itself, to render [consent] involuntary." *Commonwealth v. Barone*, 383 Pa.Super. 283, 288, 556 A.2d 908, 910 (1989). Moreover, "a decision to consent is not rendered involuntary merely because it is induced by a desire to avoid the possibility of a well-founded prosecution." *Commonwealth v. Clark*, 516 Pa. 599, 606, 533 A.2d 1376, 1379 (1987).

As applied to the instant matter, the attendant facts surrounding Provenzano's consent reveal that he was able to make independent and calculating decisions relative to his police involvement. For example, he told Detective Hainey not to arouse suspicion by standing in view of the street in front of his home. Further, after caring for his invalid wife and determining that he should pack an overnight bag, Provenzano insisted that he and Detective Hainey leave by the back door. Finally, after discussing the taping procedure with District Attorney Haberstroh and signing the consent form, Provenzano suggested

that the police leave the seized cocaine in the motel room.

As a whole, we are convinced that Provenzano's actions reflect that his consent was knowing, intelligent and voluntary. He was able to contemplate the situation and clearly communicate his thoughts and suggestions. Therefore, while the fact that he ingested alcohol and/or narcotics during the hours prior to his arrest is a factor for this Court to consider, it is not dispositive. *See Barone, supra.* Moreover, the fact that Provenzano's decision may have been influenced by the desire to receive favorable consideration when charged and/or sentenced is of no moment. *See Clark, supra.* Indeed, such contemplative decision-making demonstrates that Provenzano was in control of his faculties and not, as Appellant suggests, unable to comprehend the situation.

■ Having determined that, under the totality of the circumstances, Provenzano's consent was knowing, intelligent and voluntary, we reject Appellant's claim that the trial court erred in failing to suppress the recorded conversations.[6]

Next, Appellant contends that the trial court erred in failing to suppress the $710.00 in marked money found on his person at the time of his arrest. In support of his argument that suppression was proper, Appellant argues that he did not commit a crime while in the motel room and that the police, therefore, did not have probable cause to arrest him.

■ "Probable cause to effectuate an arrest exists when the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." *Commonwealth v. Romero*, 449 Pa.Super. 194, 199, 673 A.2d 374, 376 (1996).

---

5. We note that, because Appellant qualifies as an "aggrieved person" as defined by the statute, he has standing to challenge whether Provenzano's consent was lawful. *See* 18 Pa.C.S.A. § 5702; *Commonwealth v. Clark*, 516 Pa. 599, 603, n. 5, 533 A.2d 1376, 1378, n. 5 (1987).

6. Additionally, Appellant argues that the taped conversations should have been suppressed because District Attorney Haberstroh did not testify

at the suppression hearing and because the tapes did not contain a preamble. These prerequisites are not, however, required by statute or caselaw. *See* 18 Pa.C.S.A. § 5704. Moreover, Appellant's argument fails to convincingly explain how Provenzano's consent or the integrity of the recordings themselves was compromised by the omissions. We therefore reject these claims.

In making this determination, this Court has held that "[p]robable cause for a warrantless arrest requires only the *probability*, and not a *prima facie* showing, of criminal activity." *Romero*, 673 A.2d at 377 (emphasis in original) (citing *Commonwealth v. Quiles*, 422 Pa.Super. 153, 167, 619 A.2d 291, 298 (1993) (en banc)).

In the instant matter, the officers received information from Detective Young's informant, Crawford Witherow, that Appellant and Provenzano were selling large volumes of cocaine in the Blair County area. Provenzano's involvement in the narcotics operation was confirmed by the controlled purchase of a half-ounce of cocaine from Provenzano to Witherow. After agreeing to cooperate with the authorities, Provenzano told the police that Appellant controlled the drug trafficking operation, had supplied Provenzano with the cocaine and had received the $750.00 purchase price. Also, Provenzano told the police that it was Appellant who suspected that Witherow was an informant and who demanded that Witherow produce the half-ounce of cocaine. This information was corroborated by the conversation between Appellant and Provenzano at the Econo Lodge. Appellant repeatedly asked Provenzano whether Provenzano had seen "the bag" and whether "he" had brought the whole half.

As a whole, we find that the police had sufficient information to justify the reasonable belief that Appellant was engaged in criminal activity. Indeed, our Supreme Court has held that "the uncorroborated confession of an accomplice which implicates the suspect will supply the probable cause for a warrantless arrest." *Commonwealth v. Zook*, 532 Pa. 79, 90, 615 A.2d 1, 6 (1992). Therefore, under the facts of the instant case, the police did not have to verify Provenzano's information by recording the Econo Lodge conversation. The fact that

Provenzano's information was corroborated by both Witherow and Appellant, therefore, makes the argument that probable cause existed even stronger.

We note, as well, that it is of no consequence that Appellant's actions while in the motel were not criminal in nature. As stated, the justification for a warrantless arrest requires only the probability, not the certainty, that the suspect has engaged in criminal activity. Also, the police already had the requisite probable cause to arrest Appellant based solely upon Provenzano's information. Moreover, the statements Appellant made while in the motel cannot be viewed in a vacuum, but rather in the context of the investigation as a whole. When so inspected, Appellant's questions and references to seeing "him" and "the bag" serve to corroborate the suspicion of criminal activity.

In sum, we find that the police had ample probable cause to arrest Appellant for suspicion of possessing and/or selling narcotics. Without further justification, the police were authorized to search Appellant's person. As this Court has held, a search incident to a lawful arrest is one of the well-recognized exceptions to the warrant requirement and " 'does not depend upon whether there is any indication that the person arrested possesses weapons or evidence as the fact of a lawful arrest, standing alone, authorizes a search.' " *Commonwealth v. Guzman*, 417 Pa.Super. 364, 369, 612 A.2d 524, 526 (1992) (quoting *Commonwealth v. Trenge*, 305 Pa.Super. 386, 403, 451 A.2d 701, 710 (1982)). Therefore, we find Appellant's averment that the police unlawfully seized the marked currency found in his front pant's pocket after his arrest to be without merit.[7]

In his next argument, Appellant contends that the trial court abused its discretion in

7. We are aware of the recent caselaw from our Supreme Court limiting, to some degree, the authority of police officers to make a warrantless search incident to arrest. Such caselaw, however, has been confined to factual situations involving the post-arrest search of automobiles. Importantly, the Court has specifically reaffirmed that a search of an arrestee's person and wingspan is constitutionally permissible. As the Court stated, "In short, there is no justifiable search incident to arrest under the Pennsylvania Constitution *save for the search of the person and the immediate area which the person occupies during his custody.*" *Commonwealth v. White*, 543 Pa. 45, 57, 669 A.2d 896, 902 (1995) (emphasis added). *See also Commonwealth v. Stroud*, 699 A.2d 1305, 1310 (Pa.Super.1997) (no *per se* automobile exception to the warrant requirement).

permitting the Commonwealth to use a demonstrative chart during its closing argument. The chart in question was labeled "The Rickabaugh Cocaine Organization" and contained numerous photographs of Appellant and his associates as well as notations of their respective roles in the organization. Appellant contends that the chart's contents were not reasonably based upon the facts in evidence and, therefore, that the chart's use impermissibly permitted the Commonwealth to express its opinion about Appellant's culpability.

■ "Visual aids may be used to assist the jury in understanding the evidence in appropriate cases, and permission to do so is within the sound discretion of the trial judge." *Commonwealth v. Pelzer*, 531 Pa. 235, 245, 612 A.2d 407, 412 (1992). This rule applies equally to demonstrative aids used during the actual trial phase and during the parties' opening and closing arguments. Moreover, it is well-settled that, during closing arguments, a prosecutor must be given reasonable latitude to present the Commonwealth's theory of the case provided that the evidence and the inferences derived therefrom reasonably support such a scenario. *See, e.g., Commonwealth v. Persichini*, 444 Pa.Super. 110, 125, 663 A.2d 699, 706 (1995).

■ At trial in the instant matter, the Commonwealth contended that Appellant was the leader of a vast cocaine distribution network which operated throughout Blair County. In order to prove Appellant's primary role in the operation, the Commonwealth offered testimony and supporting documentary proof from over twelve former members of Appellant's organization. Each of these witnesses testified as to their particular role in the drug scheme, the manner in which the organization was operated on a daily basis, and the fact that Appellant controlled the group. Conversely, Appellant contended that, rather than being the operation's central figure, he was one of a number of minor figures who sold cocaine throughout the Blair County area.

In light of the fact that only Appellant was charged with running a corrupt organization, and that many of his prior associates received favorable plea agreements in exchange for their testimony, it was critical to determine Appellant's precise role in the distribution network. Based upon the volumes of testimony elicited during the trial which, if believed, established that Appellant headed the distribution ring, we find no error in the content of the Commonwealth's closing argument. The facts in evidence and the reasonable inferences derived therefrom established that Appellant was much more than a minor figure in the drug network.

■ Having established that the content of the Commonwealth's closing argument was proper, we must now consider the argument's form; that is, whether the court erred in permitting the Commonwealth to display the "Rickabaugh Cocaine Organization" chart. Considering the vast amount of testimony and evidence introduced during the month-long trial, we find that the court properly concluded that the chart could "assist the jury in understanding the evidence." *Pelzer*, 612 A.2d at 412. As such, the trial court did not abuse its discretion and Appellant's argument that the chart merely expressed the prejudicial, unsubstantiated opinion of the Commonwealth must fail.

■ Next, we review whether the trial court erred in permitting Provenzano to testify regarding Appellant's pretrial threat that Provenzano would be harmed if he testified against Appellant. As previously stated, Provenzano stated on direct examination that Appellant offered to pay his personal and legal expenses if Provenzano would recant his former statements and refrain from testifying against Appellant. In conjunction with this offer, Appellant also told Provenzano that, when an unrelated associate had disagreed with him, Appellant tied the man to the back of his car and dragged him down Kettle Road. Significantly, Appellant and Provenzano were parked along the remote Kettle Road during this exchange.

Provenzano refused to testify at Appellant's preliminary hearing. At the suppression hearing, Provenzano testified favorably towards Appellant, stating that he did not voluntarily consent to the taping of his conversations with Appellant at the Econo Lodge. Prior to the trial, Provenzano confid-

ed to the police that he was threatened and that he feared for his life. As a result, Appellant was charged, in an unrelated criminal information, with intimidation of a witness.

Subsequently, Provenzano testified for the Commonwealth at trial. During his direct testimony, the court permitted the Commonwealth to question Provenzano as to why his prior testimony conflicted with his trial testimony. Provenzano, in turn, stated that his prior testimony was false and resulted from Appellant's threat against his life. Thereafter, the trial court issued a limiting instruction to the jury that the evidence could only be considered to demonstrate Provenzano's state of mind at the time of the preliminary and suppression hearings.

Presently, Appellant contends that this testimony was improperly admitted because it was not provided to the defense during pretrial discovery and because it was highly prejudicial. In this regard, Appellant notes that the numerous drug and corrupt organizations offenses with which he was charged were essentially nonviolent in nature and that Provenzano's testimony led the jury to believe that Appellant was a violent individual, thus diminishing Appellant's standing in the eyes of the jury.

Conversely, the Commonwealth argues that, because the credibility of a witness is always at issue, the court properly permitted Provenzano's prior inconsistent statements into evidence. Moreover, the Commonwealth contends, the testimony could have been introduced substantively to prove Appellant's consciousness of guilt.

 It is true that the Commonwealth may introduce evidence relative to threats made against a witness in order to explain the witness's prior inconsistent statements. *See, e.g., Commonwealth v. Martin,* 356 Pa.Super. 525, 531, 515 A.2d 18, 21 (1986). Such evidence, however, must be used to rehabilitate the witness *after* the defense, in an effort to discredit the witness, has questioned the witness about the previous testimony. *See, e.g., Martin,* 515 A.2d at 21 (evidence of threats properly admitted on cross-examination); *Commonwealth v. Bryant,* 316 Pa.Super. 46, 50, 462 A.2d 785,

788 (1983) (evidence of threats properly admitted on re-direct examination).

In the instant matter, rather than waiting to see if the defense would elicit the prior statements on cross-examination, thus calling Provenzano's credibility into question, the court allowed Provenzano to explain his prior contradictory testimony on direct examination. Until this time, the jury was unaware that Provenzano had refused to testify on one occasion and had testified for Appellant on another occasion. Such anticipatory bolstering of Provenzano's credibility was, therefore, improper. Certainly, had the court permitted the evidence in response to a defense inquiry as to why Provenzano's prior testimony conflicted with his trial testimony, we would not hesitate to conclude that the introduction was entirely proper. *See Martin, Bryant, supra.*

 Having determined that the court improperly allowed Provenzano to testify, on direct examination, that Appellant threatened his life, to explain his inconsistent statements, we must now consider whether the error warrants a reversal of Appellant's conviction; for it is well-settled that not every legal mishap prejudices a defendant to the extent that a reversal is necessary. *See, e.g., Commonwealth v. Rodriguez,* 533 Pa. 555, 559–63, 626 A.2d 141, 144–45 (1993). Rather, if this Court concludes that a trial error was harmless beyond a reasonable doubt, the conviction will be affirmed regardless of the error. *Id.*

In *Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992), our Supreme Court outlined the antecedent factors which must be fulfilled in order to conclude that a trial error was harmless. Therein, the Court stated that evidence improperly admitted may be treated as harmless if any of the following three factors is satisfied:

(1) the error did not prejudice the defendant or the prejudice was *de minimus;* or

(2) the erroneously admitted evidence was merely cumulative of other, untainted, evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Foy*, 612 A.2d at 1352.

Having reviewed the record in light of this standard, we are confident that the improperly admitted evidence was harmless error. While not cumulative of other, properly admitted evidence, the testimony cannot be said to have prejudiced Appellant to a degree warranting reversal. Provenzano was undoubtedly an important trial witness. The Commonwealth's case, however, did not hinge upon the disputed testimony, nor upon Provenzano's testimony as a whole. Instead, the accumulative testimony of copious Commonwealth witnesses, as well as supporting documentation, evidenced Appellant's culpability. In light of the overwhelming evidence of guilt, we find that the improperly admitted evidence could not reasonably be said to have contributed to the verdict. *See Foy, supra.*

Moreover, we agree with the Commonwealth's alternative argument that Appellant's threat against Provenzano would have been admissible as substantive evidence of Appellant's consciousness of guilt. *See, e.g., Commonwealth v. King*, 456 Pa.Super. 72, 78, 689 A.2d 918, 922 (1997) (Defendant's statement to Commonwealth's eyewitness that he wanted to "lay her down" admissible to show Defendant's consciousness of guilt). Therefore, the fact that the testimony was admitted for the limited purpose of explaining Provenzano's state of mind necessitates a finding that the court's error was harmless beyond a reasonable doubt.

Appellant next contends that he was denied a fair trial when the court limited the cross-examination of Commonwealth witness Donald Houp. Unlike many of the Commonwealth's other witnesses, Houp did not testify pursuant to a plea bargain. The crux of his relatively brief testimony served to tie Appellant to other Altoona area drug dealers.

On cross-examination, Houp admitted that, for a number of years, he ran a high-volume business importing cocaine from Philadelphia. He later became a police informant

and ceased dealing in narcotics. The defense also questioned Houp extensively regarding his possible bias towards the Commonwealth. Specifically, in an attempt to establish that Houp's credibility was suspect and that he was promised or expected favorable treatment in exchange for his testimony against Appellant, the defense sought to question Houp regarding a recent arrest in New Jersey. Houp, however, told the court that he feared incriminating himself and refused to answer the question. The court immediately called a recess, during which Houp was provided counsel. Thereafter, the court informed Appellant that he could not ask Houp any further questions regarding his recent New Jersey arrest.

■ As a general rule, the scope and manner of cross–examination are within the sound discretion of the trial court. Absent a finding that the court abused its discretion, this Court will not disturb the trial court's determination. *See, e.g., Commonwealth v. Auker*, 545 Pa. 521, 542, 681 A.2d 1305, 1317 (1996).

In defending the decision to limit Houp's cross–examination, both the Commonwealth and the trial court rely upon our Supreme Court's holding in *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), in which the Court held that "whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." *Evans*, 512 A.2d at 631.

■ Because the arrest about which cross-examination was sought in the instant matter involved charges brought outside of this jurisdiction, the Commonwealth contends that *Evans* is presently inapplicable. We believe, however, that by limiting the *Evans* holding to its specific facts, the Commonwealth distorts the purpose which the Court was attempting to achieve.

As the *Evans* Court acknowledged, even if no actual promises of leniency have been made, a "witness may hope for favorable treatment from the prosecutor if the witness

presently testifies in a way that is helpful to the prosecution."· *Id.* Therefore, because the possibility exists that the witness hopes for or expects special consideration from the Commonwealth in exchange for his testimony, the jury should be informed in order to properly assess the witness's credibility.

 This right to cross-examine a witness regarding pending criminal charges is not merely evidentiary in nature. Indeed, as the *Evans* Court held:

> The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity to at least raise a doubt in the mind of the jury as to whether the prosecution witness is biased.

*Id.* at 632.

Our determination that the *Evans* holding cannot be limited to its specific facts without misconstruing its intent finds support in the later case of *Commonwealth v. Nolen*, 390 Pa.Super. 346, 568 A.2d 686 (1989). Therein, our Supreme Court held that the trial court erred in refusing to permit a Commonwealth witness to be cross-examined relative to unrelated Pennsylvania and Virginia criminal charges which had been pending at the time the witness agreed to testify, but which were dismissed or reduced before the defendant's trial.

At the time the witness in *Nolen* agreed to testify for the Commonwealth, he was incarcerated in the Dauphin County Jail facing a theft charge and was awaiting extradition to Virginia to answer unrelated burglary and theft charges. After the witness agreed to cooperate, but before he testified for the Commonwealth, the Virginia charges were dismissed and the Dauphin County charge was reduced to the lesser summary offense of criminal mischief.

Similar to the instant case, the *Nolen* trial court construed our Supreme Court's holding in *Evans* narrowly and prohibited cross-examination because there were no pending criminal charges against the witness at·the· time he testified. Upon review, our Supreme Court held that the limitation was improper. While specifically noting that the *Nolen* facts did "not fall precisely within the ambit" of *Evans*, the Court nevertheless held that the defendant should have been permitted to cross-examine the witness because "a similar potential·for bias" existed. *Nolen*, 568 A.2d at 691–92. As the Court explained:

> These facts raise the inference that when [the witness] agreed to testify for the Commonwealth in appellant's case, he had expectations of leniency concerning his own pending charges, and that when he actually did testify, he·felt obliged to tailor his testimony to favor the prosecution. The trial court should have permitted appellant to expose this possible bias to the jury.

\* ·\* \*.

> Even in the absence of any agreement between the Commonwealth and [the witness], appellant deserved the opportunity to show that [the witness] could have been influenced by feelings of gratitude toward the Commonwealth since the charges pending against [the witness] had been dropped shortly after he agreed to testify.

*Id.* at 692.

In the instant matter, drug charges in New Jersey were pending against Commonwealth witness Houp at the time he testified against Appellant. Pursuant to the holdings of *Evans* and *Nolen*, Appellant should have been allowed to question Houp as to whether he had been promised leniency or, in the absence of an actual agreement, whether he expected or hoped for favorable treatment in exchange for his testimony. This information, regardless of Houp's answers, would have assisted the jury in assessing Houp's credibility. *See Evans, Nolen, supra. See also Commonwealth v. Dawson*, 702 A.2d 864 (Pa.Super.1997).

 As with Appellant's prior issue, however, we are convinced that the trial court's error was harmless beyond a reasonable doubt. Houp was a minor Commonwealth witness whose "testimony was not critical to proving appellant's guilt" and whose "credi-

bility was not a controlling issue at trial." *Nolen*, 568 A.2d at 692. Instead, a review of the trial testimony establishes that Houp merely corroborated the testimony of a number of other Commonwealth witnesses who, as stated, overwhelmingly established Appellant's guilt. Accordingly, no relief is due. *See Foy, supra.*

 In his next issue, Appellant argues that the Commonwealth violated a pretrial discovery order which directed the Commonwealth to provide Appellant with, *inter alia,* any "tape recordings of statements given to the police by Defendant Provenzano." Opinion, 2/22/96, at 25. In response to this order, the Commonwealth released a 102–page written statement as well as an 83–page transcript of Provenzano's grand jury testimony.

Neither of these statements, however, included references to Appellant's threat to Provenzano which, as previously discussed, led to the unrelated intimidation of a witness charge against Appellant. This is so in spite of the fact that, at trial, Provenzano testified that he told the police about the incident on Kettle Road "off the record" on several occasions prior to trial.

Appellant argues that the Commonwealth's malfeasance resulted in trial surprise and resulting prejudice in that the jury, after hearing about the threat, received the impression that Appellant was a violent individual. Conversely, the Commonwealth avers that the information was not discoverable because it was not exculpatory and that, while Appellant has alleged prejudice, he has failed to establish such.

In the instant matter, discovery was requested pursuant to subsection (B)(2) of the Rule, relating to discretionary disclosure, which provides that, upon motion by the defendant, the court may order the Commonwealth to provide, *inter alia,*

> [A]ll written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspir-

ators or accomplices, whether such individuals have been charged or not.

Pa.R.Crim.P. 305(B)(2)(a)(iii), 42 Pa.C.S.A. Moreover, the Rule imposes upon the parties a continuing duty to disclose "additional evidence or material previously requested or ordered to be disclosed" which is discovered "prior to or during trial." Pa.R.Crim.P. 305(D). We note, as well, that, pursuant to subsection (B)(1)(b) of the Rule, a defendant's inculpatory statements are subject to mandatory disclosure provided that the defendant requests the same.

 It is, therefore, plain that Provenzano's pretrial statements to the police that Appellant threatened his life were subject to discovery in the instant matter. Nonetheless, as we discussed at length in Appellant's prior issue regarding Provenzano's actual trial testimony relative to the threat, Appellant has failed to establish the requisite degree of prejudice which would entitle him to relief.

Moreover, Appellant's argument that the Commonwealth's failure to disclose Provenzano's statement resulted in trial surprise is suspect. As previously stated, prior to the time at which Provenzano testified, Appellant was charged by a separate criminal information with intimidation of a witness. The sidebar conference during which the parties discussed whether Provenzano could testify as to the threats reveals conclusively that Appellant's trial counsel was aware of the separate charge. *See* N.T., 5/7/96, Volume I, at 338 ("My only problem is you guys already filed Intimidation of Witness charges against Rickabaugh").

 While Appellant may not have been aware that the Commonwealth would introduce the threat at trial, he was certainly aware that the Commonwealth knew of the threat. To the extent that Appellant presently argues that the Commonwealth was obligated to reveal its actual trial strategy, and not merely the information at its disposal to formulate the same, we reject Appellant's argument.[8]

8. Appellant also argues that the Commonwealth violated the pretrial discovery order by failing to disclose the "Rickabaugh Cocaine Organization" chart which the Commonwealth employed as a demonstrative aid during its closing argument.

Appellant has, however, utterly failed to establish how this visual aid was discoverable. Moreover, as discussed earlier in this opinion, the chart was properly admissible as a demonstrative aid to explain the Commonwealth's theory of the case

Appellant's next issue questions whether the trial court improperly charged the jury that, in considering whether Appellant was guilty of the State corrupt organizations charges, it could consider the three County drug charges as well as the twelve State drug charges.

Pursuant to the statutory provision prohibiting corrupt organizations, the Commonwealth must establish, as an essential element of the crime, that the defendant received "income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal." 18 Pa.C.S.A. § 911(b)(1). The statute further defines "pattern of racketeering activity" as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." 18 Pa.C.S.A. § 911(h)(4). "Racketeering activity," in turn, is defined as, *inter alia*, any violation of the Controlled Substance, Drug, Device and Cosmetic Act, prohibiting the sale or dispensing of narcotic drugs. 18 Pa.C.S.A. § 911(h)(1)(ii).

Therefore, in order for Appellant to be found guilty of the State corrupt organizations charges, the Commonwealth had to prove that Appellant was guilty of at least two of the drug offenses with which he was charged. Three of the drug charges were brought in the County information at No. 208 of 1995. The additional twelve drug charges were included in the State indictment at No. 39 of 1996. Following deliberation, the jury found Appellant guilty of five of the twelve State drug offenses and guilty of all three County offenses.

Based upon this verdict, we reject Appellant's claim. Even if one did not consider the County information, it is plain that the guilty verdicts as to five of the State drug charges provided the necessary prerequisite for concluding that Appellant engaged in a pattern of racketeering activity within the meaning of the statute.

Moreover, the County and State charges were joined for trial pursuant to Pa. R.Crim.P. 1127 and prosecuted jointly by the Blair County District Attorney's Office as well as the Office of the Attorney General. This joinder, which Appellant did not oppose, resulted in the consolidation of the charges for trial. There is, in short, no record support for Appellant's contention that "[t]his was not one case being tried by the Attorney General and District Attorney together, but two separate and distinct sets of charges each being tried by a separate prosecutor." Appellant's Brief at 50.

Next, Appellant contends that he was denied a fair trial because the prosecution relied upon the false testimony of Commonwealth witnesses Jeff Robertson and Michelle Moran. At trial, the witnesses testified relative to a St. Patrick's Day meeting with Appellant at the Econo Lodge Motel. Appellant contended that such a meeting never took place and, as part of an extensive cross-examination of both witnesses, asked Robertson whether he was registered as a guest at the motel on that day. Robertson replied that, although he used the alias "Gary Robertson" when registering, the meeting took place in all other respects as he and Moran testified.

On appeal, Appellant continues to assert that the St. Patrick's Day meeting never took place. In this respect, Appellant seems to present a challenge to the weight of the evidence in that he questions the witnesses' credibility. It is, however, well-settled that the credibility of witnesses and the weight to be accorded their testimony are "matters within the province of the trier of fact, who is free to believe all, some or none of the evidence." *Commonwealth v. Perez*, 698 A.2d 640, 645 (Pa.Super.1997). Faced with conflicting testimony as to whether the disputed meeting occurred, it was for the jury in this matter to deliberate and decide whom to believe. We will not disturb this factual finding.

In addition to the weight claim, Appellant suggests that not only was Moran and Robertson's testimony perjurious, but that the Commonwealth knew of the falsity prior to trial. This bold assertion is completely vacuous. The intimation or accusation that a

to the jury and did not unduly prejudice Appellant.

party suborned perjury is serious indeed, for the consequences of such an illegality are grave. Absent a proffer which raises a genuine question as to whether an agent of the Commonwealth knowingly presented false testimony, this Court will not review the issue. *See, e.g., Commonwealth v. Rivera,* 454 Pa.Super. 451, 454, 685 A.2d 1011, 1013 (1996).

Next, Appellant posits that the Commonwealth denied him a fair trial by entering into contingent plea agreements with a number of his co-conspirators. Appellant argues that the agreements resulted in false testimony being introduced against him. Also, Appellant alleges that the agreements were entered into improperly because some of the individuals were similarly situated to him yet received favorable treatment as compared to him.

At the outset, we note that Appellant extensively cross-examined each witness as to their potential bias and motive in testifying against him. The plea agreements were fully and fairly disclosed and the jury was able to consider the fact the witnesses may have been attempting to curry favor with the prosecution. Appellant exercised his constitutional right to confront the witnesses. In the final analysis, however, the factfinding process was properly left to the jury.

We turn now to Appellant's averment that, although he was similarly situated to some of the witnesses who entered into plea agreements with the Commonwealth, he was treated more harshly. In order to present a *prima facie* case of selective prosecution, the movant must establish that (1) others similarly situated were not prosecuted for similar conduct; and (2) the Commonwealth's discriminatory prosecutorial selection was based upon impermissible or arbitrary factors. *See, e.g., Commonwealth v. Mulholland,* 549 Pa. 634, 702 A.2d 1027 (1997).

Appellant has failed to establish either of these factors. The Commonwealth's trial theory was that Appellant was the leader of a vast cocaine distribution network which operated throughout Blair County. While a number of secondary people in Appellant's organization were arrested and charged with drug violations, it was the Commonwealth's position that these people were underlings in Appellant's network. Appellant was, therefore, charged with more serious narcotics offenses as well as running a corrupt organization, and the secondary players were offered plea agreements in exchange for their testimony against Appellant.

A review of the evidence introduced at the trial sufficiently establishes that Appellant was, in fact, more culpable than his cohorts. While Appellant continues to dispute this, one cannot arrive at any other conclusion without creating a revisionary rendition of the facts adduced below. This we will not do. Because Appellant has failed to demonstrate that the Commonwealth treated others similarly situated to him favorably, he is entitled to no relief. *See Mulholland, supra.*

Next, Appellant argues that the Commonwealth failed to establish a *"corpus delicti* for possession of a controlled substance with intent to deliver." Appellant's Brief at 57. More particularly, Appellant avers that he was improperly convicted of the five State possessory drug offenses because the Commonwealth did not introduce the actual cocaine which it alleged was purchased in New York, transported to Pennsylvania, and sold in Blair County. This argument is fundamentally flawed.

The *corpus delicti* rule provides that "a criminal conviction may not be based upon the extra-judicial confession of the accused unless it is corroborated by independent evidence." *Commonwealth v. Ahlborn,* 441 Pa.Super. 296, 301, 657 A.2d 518, 520 (1995). *See also Commonwealth v. Persichini,* 444 Pa.Super. 110, 117, 663 A.2d 699, 702 (1995). The well-reasoned rationale for the rule is "to prevent the use of hasty and unguarded confessions to convict an individual when no crime has been committed." *Ahlborn,* 657 A.2d at 521.

A review of the record in the instant matter demonstrates that the *corpus delicti* rule is completely inapplicable. In point of fact, Appellant never confessed to any of the plethora of crimes with which he was charged. It is, therefore, axiomatic that there is no

"hasty and unguarded" confession against which to protect.

■ Assuming that Appellant did confess to one or more of the State possessory crimes, we would still find that Appellant has failed to demonstrate entitlement to relief. As previously recounted, the case against Appellant spanned four weeks and entailed testimony from numerous witnesses as well as supporting evidentiary documentation. In essence, the evidence established that Appellant employed people to travel to New York to purchase large quantities of cocaine. The drugs were then transported to Blair County, delivered to Appellant, and prepared and packaged for retail sale. As a whole, the evidence amply supported Appellant's possessory drug convictions.

■ Moreover, Appellant is simply incorrect in his assertion that, in a prosecution for possession with intent to deliver narcotics, the Commonwealth must produce the actual contraband at trial. Rather, it is "well-established in this Commonwealth that the identity of the illegal narcotic substances may be established by circumstantial evidence alone." *Commonwealth v. Minott*, 395 Pa.Super. 552, 562, 577 A.2d 928, 932 (1990). *See also Commonwealth v. Myers*, 452 Pa.Super. 299, 308–11, 681 A.2d 1348, 1353–54 (1996). Because the testimony in the instant matter sufficiently, albeit circumstantially, established that Appellant constructively possessed cocaine with the intent to deliver the same, Appellant's present argument must fail. *See, e.g., Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa.Super.1997) ("The Commonwealth need not prove Appellant had actual possession of the drugs. Instead it can prove Appellant had constructive possession. Constructive possession exists where a defendant has power of control over the drugs and intends to exercise that control").

In his next argument, Appellant contends that the Commonwealth failed to establish that he engaged in a pattern of racketeering activity within the meaning of the corrupt organizations statute. Specifically, Appellant argues that insufficient evidence was adduced to prove that his illegal drug activities resulted in the infiltration of a legitimate business.

Pursuant to the prohibited activities provision of the corrupt organizations statute, it is unlawful

> for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise.

18 Pa.C.S.A. § 911(b)(1).

In *Commonwealth v. Besch*, 544 Pa. 1, 674 A.2d 655 (1996), our Supreme Court reviewed this statute and interpreted the term "enterprise" to restrict prosecutions in cases in which the defendant was engaged in a wholly illegitimate business. That is, the Court held that the statute "is directed at preventing the infiltration of legitimate business by organized crime in order to promote and protect legitimate economic development within Pennsylvania." *Besch*, 674 A.2d at 659.

Just two weeks following the *Besch* decision, however, our legislature amended the corrupt organizations statute and, in so doing, clarified its intent that wholly illegitimate businesses were never meant to be exempted from the statute. *See Commonwealth v. Shaffer*, 696 A.2d 179, 183 (Pa.Super.1997). This legislative pronouncement was recognized and applied by this Court in *Shaffer*, wherein we held that the corrupt organizations statute was constitutionally applied to a defendant who was prosecuted for operating a wholly illegitimate business before the statute was amended to encompass such activities. In holding that the prosecution did not violate the prohibition against *ex post facto* laws, this Court stated that "to apply the rationale of *Besch* in disposing of the instant case would be to ignore the intent of the legislature, despite the *Besch* court's belief that it had correctly discerned and applied same." *Shaffer*, 696 A.2d at 183.

■ Appellant is, therefore, incorrect in his assertion that the corrupt organizations statute is only applicable to organized crimi-

nal activities which result in the infiltration of a legitimate business. Nonetheless, a review of the record reveals that substantial evidence was presented at trial which proved that Appellant's illegal narcotics operation did, in fact, infiltrate the legitimate business of Mermaids. For these reasons, Appellant's present argument must fail.

■ With respect to the sufficiency of the evidence introduced to prove that Appellant engaged in organized crime within the meaning of the statute, this Court has held that "in order to sustain a conviction for corrupt organizations, the Commonwealth must prove that there was an ongoing organization engaged in commerce and that the associates of the organization functioned as a continuing unit." *Commonwealth v. Donahue,* 428 Pa.Super. 259, 274, 630 A.2d 1238, 1245 (1993).

To this end, the Commonwealth in the present case produced evidence that Appellant operated an ongoing narcotics operation whose participants were assigned defined roles such as procurers, couriers, distributors, financiers and packagers. While an individual's role was subject to change depending upon the needs of the business and the individual's trustworthiness, the roles themselves were permanent.

Consistent with our prior caselaw, we hold that this evidence sufficiently established that Appellant engaged in organized crime within the meaning of the statute. Appellant's assertion that "there was no evidence presented or even alleged which would lift his purported drug selling conduct out of the ordinary class of drug sellers" is belied by the record. Appellant's Brief at 60–61.

■ We now review the sufficiency of the evidence proffered to prove that Appellant's illegal activities infiltrated a legitimate business. Appellant's wife, Laura Rickabaugh, bought a bar called Mermaids. Before Mermaids opened for business in March of 1994, Appellant used the proceeds from his drug sales to remodel the bar. Thereafter, Appellant assumed management of the bar and was responsible for all of the operating decisions, such as ordering supplies and scheduling dancers.

Importantly, there was substantial testimony that Appellant used the Mermaids establishment as the base of his cocaine operation. He routinely commingled the funds and proceeds of the drug and bar sales. On at least one occasion, Appellant took money from Mermaids' cash register and gave it to an associate, Jeff Robertson, so that Robertson could travel to New York to purchase cocaine. Appellant also routinely sold cocaine from Mermaids and hosted after-hours cocaine parties at the bar. In fact, Appellant even paid his sister-in-law, Sonya Snowberger, $500.00 per week to store cocaine in her apartment, which was located in the same building as Mermaids.

After reviewing this evidence, we do not hesitate to disagree with Appellant's assertion that "[h]e was simply portrayed as [a] guy selling drugs who also happened to be running his wife's bar." Appellant's Brief at 61. It is true that Appellant was responsible for running both businesses. It is also a fact, however, that Appellant merged the businesses' identities such that each became indebted to, and dependent upon, the other for its continuation. We therefore reject Appellant's argument that the Commonwealth introduced insufficient evidence to sustain the corrupt organizations verdicts.

In his final argument, Appellant challenges both the legality and the discretionary aspects of the trial court's sentence. Following the jury's verdict, the court deferred sentencing pending the preparation of a presentence report. A sentencing hearing was then held at which several law enforcement officers who had not been interviewed for the presentence report testified. Prior to the sentencing hearing, the Commonwealth filed a timely notice to proceed pursuant to the applicable mandatory sentencing provisions of the Sentencing Code.

Thereafter, the court imposed an aggregate sentence of forty to sixty-four years' incarceration as well as an aggregate fine of $250,000.00. The individual terms of incarceration were imposed as follows: At County Information No. 208 of 1995:

(1) possession with intent to deliver cocaine: five to ten years' incarceration (sub-

ject to the mandatory minimum sentence pursuant to 18 Pa.C.S.A. section 7508(a)(3)(ii));

(2) possession of cocaine: merged with count (1);

(3) criminal conspiracy (possession with intent to deliver cocaine): five to ten years' incarceration (concurrent with count (1)).

At State Information No. 39 of 1996:

(1) possession with intent to deliver cocaine: four to eight years' incarceration (consecutive to count (1) of information No. 208 of 1995) (subject to the mandatory minimum sentence pursuant to 18 Pa. C.S.A. section 7508(a)(3)(iii));

(2) possession with intent to deliver cocaine: seven to ten years' incarceration (consecutive to count (1) of information No. 208 of 1995) (subject to the mandatory minimum sentence pursuant to 18 Pa. C.S.A. section 7508(a)(3)(iii));

(3) possession with intent to deliver cocaine: seven to ten years' incarceration (consecutive to count (1) of information No. 208 of 1995) (subject to the mandatory minimum sentence pursuant to 18 Pa. C.S.A. section 7508(a)(3)(iii));

(4) possession with intent to deliver cocaine: seven to ten years' incarceration (consecutive to count (1) of information No. 208 of 1995) (subject to the mandatory minimum sentence pursuant to 18 Pa. C.S.A. section 7508(a)(3)(iii));

(5) possession with intent to deliver cocaine: seven to ten years' incarceration (consecutive to count (1) of information No. 208 of 1995) (subject to the mandatory minimum sentence pursuant to 18 Pa. C.S.A. section 7508(a)(3)(iii));

(13) criminal conspiracy (possession with intent to deliver cocaine): three and one-half to seven years' incarceration (concurrent with count (5) of information No. 039 of 1996);

(14) corrupt organizations: one and one-half to three years' incarceration (consecutive to count (5) of information No. 039 of 1996);

(15) criminal conspiracy (corrupt organizations): one and one-half to three years'

incarceration (consecutive to count (14) of information No. 039 of 1996).

▮ Appellant alleges that his sentence was illegally imposed in order to punish him for exercising his constitutional right to a trial. If true, Appellant's claim would entitle him to relief. *See, e.g., Commonwealth v. Bethea,* 474 Pa. 571, 573–76, 379 A.2d 102, 103–04 (1977) (constitutionally impermissible for court to impose a more severe sentence merely because the defendant exercised his constitutional right to a jury trial).

In support of this averment, however, Appellant merely reiterates his previous argument relating to the more lenient sentences which his former cohorts received pursuant to their negotiated plea agreements. As we have already discussed, the record supports the finding that Appellant's associates were offered substantially lesser sentences because, as compared to Appellant, they were minor figures in the organization and because they were willing to testify against Appellant at trial.

We also note that, in addressing this issue prior to imposing sentence, the trial court stated that, "I am not going to punish you one second for maintaining your innocence. I am not going to punish you one second for exercising your right to a jury trial." N.T., 7/23/96, at 72. Appellant's bald assertion that the trial court punished him merely because he exercised his sixth amendment right is unsupported and will not be inferred.

▮ Appellant also asserts that the trial court unlawfully imposed mandatory minimum sentences with respect to the five possession with intent to deliver convictions of information No. 39 of 1996. In support of this argument, Appellant argues that the Commonwealth failed to produce the actual cocaine and that the evidence introduced at trial was insufficient to support a finding that "the aggregate weight of the compound or mixture of the substance involved [was] at least 100 grams." 18 Pa.C.S.A. § 7508(a)(3)(iii).

In *Commonwealth v. Myers, supra,* this Court specifically held that a mandatory minimum sentence, which is premised upon the weight of a possessed narcotic, may be im-

posed regardless of the fact that the drugs are not "seen, seized, weighed or otherwise tested before their weight can be established." *Myers*, 681 A.2d at 1353. Rather, provided that sufficient circumstantial and/or corroborative evidence is introduced, the trial court may determine that the narcotics possessed and/or delivered weighed in excess of the statutory minimum. Specifically, we explained that:

> Keeping in mind the lower preponderance of the evidence standard utilized under the mandatory sentencing guidelines, we find the court did not abuse its discretion in imposing sentences under Counts II–IV consistent with the amount of marijuana admittedly transported by Myers, where that transportation was established by independent evidence at trial.

*Myers*, 681 A.2d at 1353–54.

At trial in the instant matter, Appellant's associates testified that, at his behest, they made numerous trips to New York to purchase cocaine. Competent testimony established that, on each trip, the organization members would purchase at least 500 grams of cocaine. Since Appellant was sentenced pursuant to that portion of the statute requiring that the defendant possess at least 100 grams of the illegal substance, we find no error in the trial court's determination that the mandatory minimum sentencing provisions were applicable. *See Myers, supra.*

■ Appellant also raises several challenges to the discretionary aspects of his sentence.[9] In presenting such a challenge, Appellant must demonstrate that a "substantial question" exists that "the trial judge's actions were either inconsistent with the specific provisions of the Sentencing Code, or contrary to the norms which underlie the sentencing process." *Commonwealth v. Dalberto*, 436 Pa.Super. 391, 402, 648 A.2d 16, 22

(1994) (*quoting Commonwealth v. Zelinski*, 392 Pa.Super. 489, 499, 573 A.2d 569, 574 (1990)).

In the instant matter, Appellant avers that: (1) the imposition of consecutive, rather than concurrent, sentences was excessive; and (2) the court erred in disregarding the recommended sentence proposed in the presentence report. As neither of these averments fulfill the above standard, we hold that these issues are without merit.

■ Matters of sentencing are left to the sound discretion of the trial judge. Absent a finding that the court manifestly abused its discretion, this Court will not substitute its judgment for that of the trial court. *See, e.g., Commonwealth v. Hoag*, 445 Pa.Super. 455, 457–60, 665 A.2d 1212, 1213–14 (1995).

■ It is well-settled that, in imposing sentence, a trial judge has the discretion to determine whether, given the facts of a particular case, a given sentence should be consecutive to, or concurrent with, other sentences being imposed. For this reason, this Court has previously held that such a challenge "does not present a substantial question regarding the discretionary aspects of sentence." *Hoag*, 665 A.2d at 1214.

This truism is particularly apt in the present case where, after presiding over Appellant's trial, reviewing the presentence report and receiving independent testimony from Appellant and law enforcement officers not previously interviewed, the trial court imposed what it believed to be the necessary and appropriate sentence. It would be improper and unjust for this Court, with only the cold record to review, to hold that the trial court abused its discretion in determining that the imposition of consecutive sentences befit Appellant's crimes.[10]

---

9. We note that Appellant has complied with the requirements of Pa.R.A.P. 2119(f), 42 Pa.C.S.A., by including in his brief a concise statement of reasons relied upon for allowance of appeal.

10. On the final page of his Brief, Appellant submits, in boilerplate fashion, four additional reasons why he believes his sentence was inappropriate. These "arguments" are presented in flagrant disregard to Pa.R.A.P. 2119(b), Cita-

tions to authorities, and its accompanying case-law. *See, e.g., Commonwealth v. Montgomery*, 455 Pa.Super. 202, 206, 687 A.2d 1131, 1133 (1996). The paucity of precedential authority or any substantive discussion of these issues renders effective appellate review of these claims impossible. *See, e.g., Commonwealth v. Dennis*, 421 Pa.Super. 600, 611, 618 A.2d 972, 978 (1992).

With respect to Appellant's claim that the trial court erred in imposing a sentence substantially greater than that recommended in the presentence report, we note, initially, that Appellant has failed to support his assertion with any authority. Nonetheless, we do not hesitate to conclude that such an allegation fails to present a substantial question that the Sentencing Code has been compromised. As previously stated, matters of sentencing are left to the discretion of the trial court. A *recommended* sentence is just that and nothing more; the trial court was free to accept or reject the same without abusing its discretion.

Judgment of sentence affirmed.