J-S19033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES IYEKEKPOLOR, | : | |
| | : | |
| Appellant | : | No. 3150 EDA 2014 |

Appeal from the Judgment of Sentence September 18, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0011512-2012

BEFORE: BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 23, 2016**

James Iyekekpolor ("Iyekekpolor") appeals from the judgment of sentence entered following his conviction of simple assault and recklessly endangering another person ("REAP").[1]  We affirm.

In its Opinion, the trial court summarized the factual history underlying the instant appeal, which we incorporate herein by reference. **See** Trial Court Opinion, 3/17/15, at 2-4 (unnumbered).

A jury convicted Iyekekpolor of the above-described charges.  The trial court sentenced Iyekekpolor to a prison term of one to two years for his conviction of simple assault.  For his conviction of REAP, the trial court sentenced Iyekekpolor to a consecutive prison term of one to two years. Iyekekpolor filed a post-sentence Motion, which the trial court denied. Thereafter, Iyekekpolor filed the instant timely appeal, followed by a court-

---

[1] 18 Pa.C.S.A. §§ 2702, 2705.

ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Iyekekpolor presents the following claims for our review:

1. Did the trial court err by permitting the Commonwealth to play a 911 recording wherein the caller was relaying information that was relayed to her, and which she did not personally observe, as such admission allowed the introduction of inadmissible double hearsay?

2. Did the trial court err by ruling that an allegation from a Commonwealth witness that [Iyekekpolor] encountered her after her testimony would be admissible[,] even though the allegation was uncorroborated, uncharged, and unproven?

Brief for Appellant at 4.

Iyekekpolor first claims that the trial court improperly admitted the 911 recording of a caller relaying information from a third person, under the excited utterance exception to the rule against hearsay. *Id.* at 9. Iyekekpolor states that the caller "was apparently inside the school and relaying information to the police that she did not personally observe." *Id.* According to Iyekekpolor, the recording "does not evince that the caller was suffering from or dominated by 'nervous excitement.'" *Id.* at 10. Further, Iyekekpolor argues, the caller did not actually experience the startling event. *Id.* Because the caller did not witness the event, Iyekekpolor contends that the evidence was inadmissible under this exception. *Id.* at 10-11.

Iyekekpolor further argues that the above evidence was not admissible under the "present sense impression" exception to the rule against hearsay. *Id.* at 11. Once again, Iyekekpolor bases his claim upon the fact that the

caller did not actually witness the event. *Id.* Iyekekpolor states that "this does not satisfy the requirements of the exception that the declarant 'perceive' the event." *Id.*

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012) (citation and internal quotation marks omitted).

As this Court has explained,

> [h]earsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. However, certain exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule.

*Commonwealth v. Kuder*, 62 A.3d 1038, 1055 (Pa. Super. 2013).

The excited utterance exception to the rule against hearsay applies when there is a "statement relating to a startling event or condition, made while the declarant was under the stress of the excitement that it caused." Pa.R.E. 803(2). There is no requirement that the statement describes or explains the startling event or condition, but it does have to relate to it. Pa.R.E. 803(2), cmt. Applying Rule 803(2), our Pennsylvania Supreme Court has stated that a statement, made under the following circumstances, is considered an excited utterance:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties…. **Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.**

*Commonwealth v. Sherwood*, 982 A.2d 483, 495-96 (Pa. Super. 2009) (emphasis added, citation omitted). "The crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Id.*

Rule 803(1) permits the admissibility of a "present sense impression" as an exception to the rule against hearsay. A present sense impression is defined as "a statement describing or explaining an event or condition made **while the declarant was perceiving the event or condition**, or immediately thereafter." Pa.R.E. 803(1) (emphasis added). The "declarant need not be excited or otherwise emotionally affected by the event or condition perceived." Pa.R.E. 803(1), cmt.

At issue in this appeal is the trial court's admission of the 911 telephone call identified at trial as "Track 3," and designated as Trial Exhibit C-8. The content of Track 3 is as follows:

- 4 -

[Dispatcher]: Philadelphia Police.

[Caller]: Hi, um, I have a parent fight out at 22nd and Norris Streets. There are adults beating each other up outside.

[Dispatcher]: I'm sorry, what's going on?

[Caller]: Uh, there are adults beating each other up on the corner of 22nd and Norris. I'm calling from [inaudible] Frederick Douglas Charger School.

[Dispatcher]: Alright, we'll be out there as soon as possible.

[Caller]: There, the man is bleeding severely.

[Dispatcher]: Do you need an ambulance?

[Caller]: Yes, hopefully, yes.

[Dispatcher]: Hold on.

[Caller]: Three men, two men on one, and one female.

[Call is transferred to Fire Department Dispatcher]

[Dispatcher]: Philadelphia Fire Department [inaudible] what's the address?

[Caller]: Hi, uh, it's 2118 West Norris Street. There's a man severely beaten in the street, bleeding from the head.

[Dispatcher]: … West Norris Ma'am, or East Norris?

[Caller]: Yes. West Norris.

[Dispatcher]: He's outside?

[Caller]: Yes, he's outside on the street.

[Dispatcher]: Are they still going after him?

[Caller]: Uh, they just left. They just [] threw the weapon in the yard and left.

[Dispatcher]:  Ok was it a shooting or a stabbing?

[Caller]:  I don't know, it looked like um, **I saw them throw a metal rod in the field**.

[Dispatcher]:  Alright, does the man appear to be moving at all?

[Caller]:  He is moving, he's getting up, but his face is badly beaten.

[Dispatcher]:  Alright, is anybody over there with him?

[Caller]:  There's a female screaming.  He's, he's disoriented, he's trying to stand up right now.

[Dispatcher]:  Tell, tell her to keep him on the ground.  Tell her not to try to get up and move him.

[Caller]:  OK[,] I'm actually, I don't know that it's safe for me to go outside, um **I'm looking through a window right now**.

[Dispatcher]:  Just tell her, tell her, tell the woman that is with him to keep him on the ground, not to move him, tell him not to try and get up.  Somebody's on the way over, the more he moves the more likely he is to hurt himself.

[Caller is heard speaking to another person]

[Caller]:  **He stabbed her.  He stabbed her, so there's a knife involved.**  Um, we're going to lock down our building, yeah, we're going to lock down our building, I don't think we need to let our students out.  Ok, um ….

[Dispatcher]:  Did you say he's armed with a knife?

[Caller]:  Uh, there was a knife, **I just got a report that another observer saw a knife, so we need to lock down the building []**.

[Caller]:  Um, I'm going to, do I need to stay on the phone with you?

[Dispatcher]:  Not unless you want to, ma'am.

- 6 -

[Caller]: Ok, ok[,] I'm going to go take care of the kids. Thank you.

Trial Exhibit C-8 (admitted at N.T., 5/15/14, at 59) (emphasis added).

Our review of the record discloses that, contrary to Iyekekpolor's contention, the caller relayed her present sense impression of what was taking place outside of the window. Further, the events that were relayed by the caller were "sufficiently startling and so close in point of time as to render her reflective thought processes inoperable[,]" and that were "a spontaneous reaction to that startling event." *Sherwood*, 982 A.2d at 96.

In the above-quoted 911 telephone conversation, the caller made one statement referring to information relayed by a third person. Specifically, the 911 caller referred to having received confirmation that a knife was involved in the altercation. Trial Exhibit C-8. Upon our review, we conclude that any error in the admission of this statement constituted harmless error.

As our Supreme Court has recognized,

[h]armless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014) (citation omitted).

Here, the caller's mention of a knife was cumulative to the testimony of other, properly admitted evidence. *See* N.T., 5/14/14, at 28 (wherein witness Regina Anderson testified as to the use of a knife during the altercation); *see also* N.T., 5/15/14, at 24 (wherein Detective Sean McCaffery testified that he found a knife in a vehicle at the scene), 29 (wherein Officer John Monahan ("Officer Monahan") testified that he observed cuts on Iyekekpolor), 34 (wherein Officer Monahan testified that a person at the scene directed him to the knife located in Iyekekpolor's vehicle). Further, the caller, herself, stated that a person had been "stabbed." Trial Exhibit C-8. Because the caller's relay of information regarding a knife was cumulative to other, properly admitted evidence, we conclude that any error in its admission was harmless. *See Hairston*, 84 A.3d at 671-72. Accordingly, we cannot grant Iyekekpolor relief on this claim.

Iyekekpolor next claims that the trial court improperly admitted testimony regarding an encounter between Commonwealth witness Regina Anderson ("Anderson") and Iyekekpolor following Anderson's testimony. Brief for Appellant at 12. According to Iyekekpolor, the Commonwealth sought leave of court to present "this supposed evidence of 'witness intimidation,' but in arguing its position, conceded that it could not do so in its case-in-chief because the alleged 'bad act' was as of then unproven." *Id.* Iyekekpolor challenges the trial court's ruling that Anderson's allegation

would be admissible as evidence of Iyekekpolor's consciousness of guilt. ***Id.*** Iyekekpolor contends that, because Anderson's testimony had concluded, Iyekekpolor could not have affected her testimony. ***Id.*** at 12-13.

In its Opinion, the trial court addressed Iyekekpolor's claim, and concluded that it lacks merit. ***See*** Trial Court Opinion, 3/17/15, at 11-12 (unnumbered). We agree with the sound reasoning of the trial court, as set forth above, and affirm on this basis with regard to Iyekekpolor's second claim. ***See id.***; ***see also Commonwealth v. Rickabaugh***, 706 A.2d 826, 839 (Pa. Super. 1997) (recognizing that an appellant's threat against a witness would have been admissible as substantive evidence of the appellant's consciousness of guilt).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016



IN THE COURT OF COMMON PLEAS
FOR THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

FILED

MAR 17 2015

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH :     CP-51-CR-0011512-2012

v. :

JAMES IYEKEKPOLOR :

---

COMMONWEALTH :     CP-51-CR-0011513-2012

v. :

RICHARD SCHENCK :

CP-51-CR-0011512-2012 Comm. v. Iyekekpolor, James
Memorandum Opinion

7270644471

## MEMORANDUM OPINION

*CAMPBELL, J.*                                                    March 17, 2015

### Procedural History

Defendants James Iyekekpolor and Richard Schenck were charged with aggravated assault and related offenses occurring on September 6, 2012.

On May 12, 2014, the case proceeded to trial before this Court, sitting with a jury. On May 19, 2014, the jury returned its verdicts. Defendant Iyekekpolor was convicted of simple assault (18 Pa.C.S. § 2702) and recklessly endangering another person (18 Pa.C.S. § 2705) (REAP). Defendant Schenck was convicted of possession of an instrument of a crime (18 Pa.C.S. § 907(A)) (PIC), simple assault (18 Pa.C.S. § 2702), and REAP.

On September 18, 2014, Iyekekpolor was sentenced to 1-2 years incarceration on the simple assault and 1-2 years on the REAP. The sentences were to run consecutively, for an aggregate sentence of 2-4 years incarceration.

Iyekekpolor's post-sentence motion for reconsideration of sentence was filed on

September 23, 2014. The motion for reconsideration was denied on September 24, 2014.

A timely Notice of Appeal was filed on behalf of Iyekekpolor on October 21, 2014.

On November 4, 2014, the Court entered an order directing the filing of a Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b). The time for filing the Rule 1925(b) statement was extended by order dated December 17, 2014

On November 6, 2014, Schenck was sentenced to 2 ½ - 5 years incarceration on the PIC charge, 1-2 years on the simple assault and 1-2 years on the REAP. The sentences were each to run consecutively, for an aggregate sentence of 4 ½ - 9 years incarceration.

A timely Notice of Appeal was filed on behalf of Schenck on November 19, 2014.

On December 17, 2014, the Court entered an order directing the filing of a Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).

On January 29, 2015, a Statement pursuant to Pa.R.A.P. 1925(b) was filed on behalf of Schenck.

On February 2, 2015, a Statement pursuant to Pa.R.A.P. 1925(b) was filed on behalf of Iyekekpolor.

**Factual History**

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following:

On the afternoon of September 6, 2012, Defendant Iyekekpolor was at the Frederick Douglas School, where his five year old daughter is a student. The child's mother is Shakera Pritchett. N.T. 5/13/14, pp. 51. Ms. Pritchett is the girlfriend of Complainant, Theodore Long. N.T. 5/13/14, pp. 53. Defendant Iyekekpolor had full custody of the child. N.T. 5/13/14, pp. 51-54.

Pritchett and Long arrived at the school to pick up the child. Pritchett noticed Defendant Iyekekpolor's vehicle outside. She entered the school where she encountered Defendant Iyekekpolor. When he saw Pritchett, he said "Bitch, you're next" and started walking toward her. Pritchett left the school and walked toward Long, as Defendant Iyekekpolor followed. Long stepped between them and a "tussle" ensured. N.T. 5/13/14, pp. 54-55, 92-93; N.T. 5/14/14, pp. 59-61, 77-78, 94. Defendant Iyekekpolor pulled out a knife and cut Long in the face, near his left eye. N.T. 5/13/14, pp. 55; N.T. 5/14/14, pp. 61-62, 78-79, 97.

Defendant Schenck then approached with an object that appeared to be a stick, but which proved to be a crowbar, which he swung, striking Long on the arm and Pritchett on the leg. N.T. 5/13/14, pp. 55, 57-59; N.T. 5/14/14, pp. 37, 45, 63, 79. Pritchett tried to pull Iyekekpolor off of Long, but she got hit in the head and recalls nothing after that. N.T. 5/13/14, pp. 59, 63. At some point the knife was grabbed by Long, who used it against Iyekekpolor, before it was taken away from him. N.T. 5/13/14, pp. 82-84; N.T. 5/14/14, pp. 64-65, 85-86, 99-100. Long suffered cuts to his face, fractures to his skull, a fractured arm requiring surgical insertion of a rod, injury to his leg, a broken nose, fractured jaw, and multiple other cuts, contusions and abrasions. N.T. 5/14/14, pp. 57, 67-72. Defendant Iyekekpolor suffered multiple stab wounds to his left chest, left arm, left hand, right hand and left leg. N.T. 5/15/14, pp. 90-91.

Police Officer Daniel Rivera, along with his partner Officer Monahan, responded to a radio call of a fight on the highway. As the officers approached the school at 22nd and Norris Streets in Philadelphia they were flagged down by a woman in obvious distress, who had blood spatter on her clothing and appeared disarrayed. N.T. 5/13/14, pp. 9-10. This woman proved to be Shakera Pritchett. N.T. 5/13/14, pp. 51.

The officers observed three men who appeared to be fighting; two were bloody and

appeared wounded in some way. N.T. 5/13/14, pp. 10-11, 24, 28-29, 32. The officers separated the three and placed Long in the back of the radio patrol car (RPC). Long was bleeding heavily from the face and head and there was blood all over his clothing. Defendant Iyekekpolor was also bleeding from stab wounds to his chest, and Defendant Schenck had blood spattered on him. N.T. 5/13/14, pp. 10-11. There were heavy areas of blood at the scene, and a crowbar with blood on it. N.T. 5/13/14, pp. 12-15.

The officers were informed that a knife that had been used in the fight had been dropped in the back of a vehicle later determined to belong to Defendant Iyekekpolor. Officer Monahan looked through the window of the vehicle and observed the knife. N.T. 5/13/14, pp. 15, 33-35; N.T. 5/15/14, pp. 24-28. Defendant Schenck threw the crowbar over a gate into the schoolyard. N.T. 5/14/14, pp. 33-34.

Ms. Pritchett identified Defendants to the officers as having attacked her boyfriend, Theodore Long. N.T. 5/13/14, p. 20.

Because of his injuries, Long was transported to Temple University Hospital Emergency Room by other officers who had responded to the scene. N.T. 5/13/14, pp. 19-20.

## Discussion

Defendant Schenck raises four issues: 1) Evidence was insufficient to disprove defense of justification; 2) Error to permit introduction of complete 911 tapes (also raised by Iyekekpolor); 3) Error to permit statement of Commonwealth witness regarding prior uncharged assaultive conduct; 4) Failure to give a missing witness instruction (also raised by Iyekekpolor).

Defendant Iyekekpolor raises three additional issues: 1) Error to permit evidence of Defendant's alleged statement to a Commonwealth witness; 2) Denial of mistrial based upon allegedly improper statement of prosecutor; 3) Sentence constituted an abuse of discretion where

it exceeded aggravated range of Sentencing Guidelines and where Defendant was improperly declared ineligible for boot camp.

## 1. The evidence was sufficient to disprove defense of justification (Schenck).

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

18 Pa.C.S. § 506, relating to use of force for the protection of other persons, provides:

> (a)  General rule. -- The use of force upon or toward the person of another is justifiable to protect a third person when:
> (1)  the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
> (2)  under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
> (3)  the actor believes that his intervention is necessary for the protection of such other person.

(b) Exception. -- Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

The Supreme Court has recently explained:

To prevail on a justification defense, the defendant must show (1) he reasonably believed he [or the person he sought to protect] was in imminent danger of death or serious bodily injury and that it was necessary to use ... force against the victim to prevent such harm; (2) he [or the person he sought to protect] was free from fault in provoking the difficulty; and (3) he [or the person he sought to protect] did not violate any duty to retreat. *Commonwealth v. Sepulveda*, 618 Pa. 262, 55 A.3d 1108, 1124 (2012). Moreover, the Commonwealth sustains its burden of disproving self-defense if it proves any of the following: "that the [defendant or the person he sought to protect] was not free from fault in provoking or continuing the difficulty which resulted in the [injury]; that the [defendant] did not reasonably believe that [he or the person he sought to protect] was in imminent danger of death or great bodily harm, and that it was necessary to [use force] in order to save [himself or another] therefrom; or that the [defendant] violated a duty to retreat or avoid the danger." *Id.* at 1124 (quotation, quotation marks, footnote omitted).

*Commonwealth v. Spotz*, 84 A.3d 294, 316 n. 16 (Pa. 2014). See also *Commonwealth v. Cooke*, 405 A.2d 1290 (Pa. Super. 1979).

Here there was ample evidence demonstrating that Defendant Schenk, and Iyekekpolor, the person Schenck allegedly sought to protect, were not free from fault in continuing the incident. To the contrary, the evidence established that Defendant Iyekekpolor started the confrontation, pulled a knife and was inflicting life-threatening injuries upon the yet unarmed Long, **before** Schenck joined the attack on Long. Under these circumstances the jury could have reasonably found both that there was insufficient evidence of justification. If the jury found that there was a viable justification defense, it could have reasonably concluded that the Commonwealth's evidence disproved the defense beyond a reasonable doubt as to both Iyekekpolor (as the person initiating and continuing the assault) and Schenk (as the seeking to protect him). The jury could have also reasonably concluded that the Commonwealth's evidence disproved beyond a reasonable doubt that Long posed an imminent threat of serious bodily injury necessitating the use of force by Iyekekpolor and Schenk.

## 2. It was not error to permit introduction of complete 911 tapes. (Schenck and

**Iyekekpolor).**

It is axiomatic that the admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Seilhamer*, 862 A.2d 1263, 1270 (Pa. Super. 2004).

Here, the Commonwealth was permitted to play the 911 tapes reflecting persons calling in to report the incident. The tapes were admissible both as excited utterances and present sense impressions under Pa.R.E. 803(1) and (2).

An excited utterance, as an exception to the hearsay rule, is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pa.R.E., Rule 803(2). The Comment to this exception states that "this exception has a more narrow base than the exception for a present sense impression, because it requires an event or condition that is *startling*." *Id.*, Comment-1998 (emphasis in original). Further, "an excited utterance (1) need not describe the startling event; it need only *relate* to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. *Id.* (emphasis in original); see also *Commonwealth v. Carmody*, 799 A.2d 143 (Pa. Super. 2002).

> With respect to excited utterances by unidentified bystanders, the law in Pennsylvania has evolved to add an additional proof requirement for admissibility. In order to assure that an unidentified bystander actually witnessed an event which is relevant at the time of trial, the Pennsylvania Supreme Court has held that that it is incumbent upon the party seeking the admission of the out-of-court statement to demonstrate by the use of "other corroborating evidence" that the declarant actually viewed the event "of which he speaks." *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 496, 240 A.2d 71, 75 (1968). In *Upshur*, the Superior Court, relying upon *Carney*, ruled that it was reversible error to admit this type of statement pursuant to the res gestae exception when "the out-of-court assertion by the unidentified bystander did not demonstrate that the declarant actually viewed the event of which he spoke". *Upshur*, 764 A.2d at 75 (citing Carney); see also *Williamson v. Philadelphia Transportation Co.*, 244 Pa. Super. 492, 368 A.2d 1292 (Pa. Super. 1976).

*Commonwealth v. Hood*, 872 A.2d 175, 181-182 (Pa. Super. 2005).[1]

---

1 "Pa.R.E.Rule 803(1), the present sense impression exception to the rule against hearsay, does not explicitly adopt

The present sense impression exception to the rule against hearsay, under Pa.R.E., Rule 803(1), allows the admission of "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter ...." regardless of the availability of the declarant to testify at trial. The observation must be made at the time of the event or shortly thereafter, making it unlikely that the declarant had the opportunity to form an intent to misstate his observation. Consequently, the trustworthiness of the statement depends upon the timing of the declaration. *Commonwealth v. Gray*, 867 A.2d 560 (Pa. Super. 2005).

Another Court of Common Pleas faced a similar questions regarding a 911 tape. Judge Manning wrote:

> The 911 tape was admissible as a present sense impression. Pa. R. Evid. 803 (1). *Commonwealth v. Cunningham*, 2002 PA Super 249, 805 A.2d 566 (Pa.Super. 2002). In *Cunningham*, the Court held that the tape of a 911 call made by witnesses to a robbery was admissible as a present sense impression. The present sense impression exception to the hearsay rule permits testimony of declarations concerning conditions or non-exciting events observed by the declarant. *Commonwealth v. Harper*, 419 Pa. Super. 1, 614 A.2d 1180, 1183 (1992). The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation. *Commonwealth v. Blackwell*, 343 Pa. Super. 201, 494 A.2d 426, 431 (1985). In addition, the present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone. *Commonwealth v. Harris*, 442 Pa. Super. 6, 658 A.2d 392, 395 (1995). Here, the witness was describing the events as they were occurring. Clearly, she did not have the opportunity to reflect on what she saw and form a purpose for misstating her observation. The fact that she was available as a witness was immaterial.

*Commonwealth v. Poplawski*, 2012 Pa. Dist. & Cnty. Dec. LEXIS 434, 34-35 (Pa. County Ct. 2012).

Here, we concluded that the multiple calls, the coordination of the information with the testimony of known witnesses, as well as the majority of the 911 calls which qualified as present sense impressions, provided the necessary corroboration to admit the calls as both excited

---

the *Carney* rule, and no case subsequent to codification has done so either." *Commonwealth v. Hood*, 872 A.2d at 183.

utterances and present sense impressions.

### 3. It was not error to permit statement of Commonwealth witness regarding prior uncharged assaultive conduct. (Schenck).

Defendant Schenk objects to a reference in Complainant Long's statement, which was published to the jury, which refers to a prior instance of assaultive conduct by Defendant Iyekekpolor against Ms. Pritchett.

First, we cannot see how admission of that portion of the statement prejudiced Schenck. Moreover, the statement regarding Long's knowledge was admissible to explain Long's state of mind when he stepped between the fleeing Ms. Pritchett and the angry Mr. Iyekekpolor who was pursuing her.

In discussing similar evidence of physical conduct in a domestic relationship, the Supreme Court stated:

> While it is true that evidence of prior crimes and bad acts is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character or criminal propensity, the same evidence may be admissible where relevant for another purpose. Pa.R.E. 404(b)(2); *Kemp*, 753 A.2d at 1284. Examples of other such relevant purposes include showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, or to establish identity. Relevant to the instant case, the evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. *Kemp*, 753 A.2d at 1284. Of course, in addition to the relevance requirement, any ruling on the admissibility of evidence is subject to the probative value/prejudicial effect balancing that attends all evidentiary rulings. See Pa.R.E. 403; *Commonwealth v. Dollman*, 518 Pa. 86, 541 A.2d 319, 321-22 (Pa. 1988).

*Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008).

Here, the evidence was admissible as part of showing the nature of the relationship, including events even earlier that day, that caused Complainant Long to be concerned for the safety of Ms. Pritchett and the intentions of Defendant Iyekekpolor, and which played a role in prompting him to get between his girlfriend and Iyekekpolor.

### 4. It was not error to deny the request for a missing witness instruction. (Schenck and Iyekekpolor).

Defendants assert that the Court should have given a missing witness instruction to the jury in regard to the persons heard in the 911 tapes, and as to an unknown person who spoke to Police Officer Monahan at the scene. N.T. 5/13/14, pp. 25-27.

The missing witness adverse inference rule provides that, when a potential witness is available to only one of the parties to a trial, and it appears that the witness has special information material to the issues at trial, and the witness's testimony would not merely be cumulative, if such party does not produce the testimony of this witness, the jury may draw an inference that the witness's testimony would have been unfavorable to the party having control of the witness. *Commonwealth v. Boyle*, 733 A.2d 633, 638 (Pa. Super. 1999).

The missing witness instruction is not proper where: (1) the witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth; (2) the testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented; (3) the uncalled witness is equally available to both parties; (4) there is a satisfactory explanation as to why the party failed to call such a witness; (5) the witness is not available or not within the control of the party against whom the negative inference is desired; and (6) the testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him. *Commonwealth v. Evans*, 664 A.2d 570, 573-574 (Pa. Super. 1995).

Here, there was nothing to show that the 911 callers or the person Officer Monahan spoke to at the scene were available or within the control of the Commonwealth. Likewise, as to the latter, even if the identify was known and the person was in control of the Commonwealth, the testimony is not within the scope of the Commonwealth's interest.

The point is that the where a witness is in available to and in control of a party, to the exclusion of the opposing party, and that witness would reasonably be expected to support the

non-calling party's case, then, and only then, would a missing witness instruction be appropriate. Because those factors were not present in this case, a missing witness instruction was inappropriate and it was not error to refuse to deliver such an instruction to the jury.

**5. It was not error to permit evidence of Defendant Iyekekpolor's alleged statement to a Commonwealth witness. (Iyekekpolor).**

During a lunch break in the trial proceedings, Defendant Iyekekpolor confronted Commonwealth witness Regina Anderson, who had testified that morning. According to Ms. Anderson, as proffered by the Commonwealth: "Regina Anderson was approached by Mr. Iyekekpolor at which point he stated to her, 'I know you be around that area. I know where you be at. Stop. Stop.'" N.T. 5/14/14, p. 115. Based upon the information, the Court revoked Defendant's bail and the Commonwealth indicated that it intended to recall Ms. Anderson in rebuttal.

The following morning Defendant Iyekekpolor moved *in limine* to preclude Ms. Anderson from testifying. N.T. 5/15/14, pp. 4-9. The Commonwealth indicated that it intended to recall Anderson and present her testimony about the alleged conversation as evidence of Defendant Iyekekpolor's consciousness of guilt. N.T. 5/15/14, p. 9. The Court denied the motion and ruled that if the Commonwealth called the witness, the Court would charge the jury that it may consider the evidence as consciousness of guilt. N.T. 5/15/14, p. 10. Apparently, this ruling, and the decision of the Commonwealth to rest without calling Ms. Anderson, prompted Defendant, in consultation with his counsel, to decide not to testify and to not call character witnesses on his behalf. See N.T. 5/14/14, pp. 115-124; N.T. 5/15/14, pp. 76, 79-86.

Threats against a Commonwealth witness by a defendant are admissible to demonstrate consciousness of guilt. *Commonwealth v. Johnson*, 838 A.2d 663, 680 (Pa. 2003). For whatever reason, the Commonwealth elected not to present such testimony in its case in chief, although it could have done so then or in rebuttal. Defendant Iyekekpolor was free to take the stand and to

present character testimony. However, under these circumstances, he made a strategic decision to deprive the Commonwealth of the opportunity to present the testimony of threats to its witness, by electing not to testify or present character evidence.

The decision to permit the Commonwealth to present the admissible threats evidence was correct. That this correct evidentiary ruling created a quandary for Defendant which he resolved by withholding his evidence does not establish error.

### 6. It was not error to deny the motion for a mistrial based upon the allegedly improper statement of prosecutor. (Iyekekpolor).

Following closing arguments Defendants moved for a mistrial based upon the prosecutor saying that the defendants had the "audacity" to claim they were acting in self-defense. N.T. 5/15/14, pp. 98-99.

Ideally, it might have been preferable for the Commonwealth not to suggest that the defense asserted by Defendants was audacious. However, we think that the line of argument was a fair comment on the defense of justification and self-defense outlined and advocated by Defendants.

A prosecutor is permitted to comment and respond to the defense in closing, and even "[a] remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel." *Commonwealth v. Trivigno*, 750 A.2d 243, 249 (Pa. 2000) (plurality opinion).

Accordingly, the motion for a mistrial based upon the prosecutor's closing was appropriately denied.

### 7. The court did not abuse its discretion in sentencing Defendant Iyekekpolor.

On September 18, 2014, Defendant Iyekekpolor was sentenced to 1-2 years incarceration on the simple assault and 1-2 years on the REAP. The sentences were each to run consecutively, for an aggregate sentence of 2-4 years incarceration. Defendant asserts that this sentence, which

was well in excess of the Sentencing Guidelines range,[2] constituted a "make-up" sentence, based on impermissible factors, including the weapons involved in the incident, the conduct of the co-defendant, the nature of the injuries incurred by Complainant, and Defendant's mid-trial threats to a Commonwealth witness. Defendant's Post-Sentence Motion, ¶¶ 7-10.

In fashioning a sentence, "[t]he court e court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

This Court did just that. As noted at the time of sentencing, the conduct for which Defendant was convicted was "far beyond the heartland of the guidelines." N.T. 12/18/14, p. 22. In determining the appropriate sentence here, we considered: the fact that Defendant and his uncle assaulted Mr. Long with a knife and a crowbar; caused him to suffer multiple stab wounds, multiple fractures and other injuries; that the criminal conduct occurred in front of a school, at dismissal time, in the presence of children and their families; that numerous people were so distressed by the conduct they observed that they called 911; and that the conduct by Defendant was lawless and defiant. We also considered the long-term effects of the injuries to Mr. Long, including the change to his speech from his injuries. N.T. 12/18/14, pp. 22-23. We also considered the conduct of Defendant in approaching and threatening Commonwealth witness Anderson right after she gave evidence against him at trial. N.T. 12/18/14, p. 24.

The Court also concluded that society needed to be protected from Defendant and expressed its hope that the period incarceration would have a rehabilitative effect that would enable him to come back and not be dangerous. N.T. 12/18/14, p. 24.

The conduct here constituted a most egregious example of simple assault and REAP.

---

2 Defendant's Offense Gravity Score was 3, and his Prior Record Score was 0, yielding a Guideline range of RS-1 plus or minus 3.

Commonwealth v. James Iyekekpolor        CP-51-CR-11512-2012
Commonwealth v. Richard Schenck     Case Number: CP-51-CR-11513-2012

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated above, which service satisfies the requirements of Pa.R.Crim.P.114:

Defense Counsel/Party:

Todd Mosser, Esquire
2 Penn Center, Suite 1723
Philadelphia, PA 19102
*Counsel for Defendant, James Iyekekpolar*


Aaron Charles Finestone, Esquire
P.O. Box 22392
Philadelphia, PA 19110
*Counsel for Defendant, Richard Schenck*


Type of Service:    ( ) Personal (X) First Class Mail

District Attorney:

Hugh Burns, Esquire
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107


Type of Service    ( ) Personal (X) First Class Mail


**Dated: March 17, 2015**

*Vanessa A. Montone*
Vanessa A. Montone
Judicial Secretary to
Honorable Giovanni O. Campbell