J-S37030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.R.B., O/B/O MINOR CHILDREN L.H., J.H., AND A.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| M.G.H., | |
| Appellant | No. 1707 WDA 2015 |

Appeal from the Order Entered September 29, 2015
In the Court of Common Pleas of Erie County
Civil Division at No(s): No. 17080-2015

BEFORE:  GANTMAN, P.J., SHOGAN and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 12, 2016**

J.R.B. ("Mother") filed a petition pursuant to the Protection From Abuse Act, 23 Pa.C.S. § 6101, *et seq*. ("PFA") on behalf of herself and her three minor children, J.H. ("Child"), L.H., and A.H. (collectively, "Children"), after discovering bruises on Child following a visit with M.G.H. ("Father"). The trial court granted the petition as to Children for a period of one year. Father appealed and after careful review, we affirm in part and vacate in part.

The trial court set forth the facts and procedural history as follows:

A Temporary Protection from Abuse Order was entered in favor of [Mother] on behalf of the three minor children on June 23, 2015.  At the time of the temporary hearing, [Mother] indicated OCY was involved in the matter and made a finding of indicated abuse to her son, [Child].

[Child] was scheduled to be interviewed by a forensic interviewer in the week following the Temporary Protection from Abuse hearing. At the time, Mother expressed concern regarding the interview process and producing [Child] in court because he was autistic and mostly nonverbal.

A final hearing was scheduled, but continued pending criminal investigation and to sort out a conflict of interest between the attorneys representing the parties.

In the interim, the parties filed several motions, including a motion to compel production of records and motions for admission of [Child's] statements under the Tender Year's Exception to the hearsay rule at 42 Pa.C.S.A. § 5985.1.

On September 15, 2015, the trial court continued the final hearing once more after finding [Mother's] Motion to introduce Tender Year's Hearsay Evidence failed to comply with the statute and after learning [Father] was scheduled for a preliminary hearing on related criminal charges on September 28, 2015.

Formal testimony began September 29, 2015. At the time, the defects in [Mother's] Tender Year's Hearsay Motion had not been remedied. [Mother's] counsel proceeded with testimony from [Mother] and also introduced photographic evidence of [Child's] injuries. No hearsay statement from . . . [Children] was admitted.

The testimony revealed on the evening of June 19, 2015, Mother noticed severe bruising on [Child's] legs, back, and rear end. No bruises were present earlier in the week when Mother dropped him off at [Father's] residence for a visit.

Mother then took [Child] to St. Vincent's Hospital where he was examined. He had no broken bones, but hospital staff noticed bruising around some of [Child's] ribs. The hospital contacted the Office of Children and Youth (OCY) to report the suspected abuse.

The OCY worker dispatched to investigate the case took multiple pictures of the bruising on [Child] while at the hospital. The worker described that at the time, she noticed "linear bruising" on the backs of [Child's] thighs and some bruising on his lower back and rear-end. These pictures were admitted into evidence. Finally, the worker reported she was unable to

interview [Child] because he was nonverbal, but did state the investigation by OCY into this incident was unfounded.

Criminal charges of simple assault and endangering the welfare of a child were filed against [Father] as a result of the bruising Mother observed on [Child].

Father testified he and Mother have a contentious relationship. It was his belief Mother filed a Petition for Protection from Abuse against him to obtain full custody of [Children] and to move to Connecticut. He claimed he did not know what caused the bruising on [Child], but suggested [Child] received the injuries from a birthday party he attended where many of the children were play-fighting. Father denied abusing the child.

At the conclusion of testimony, this Court found Mother met her burden and granted her petition as to [Children], but found insufficient evidence had been presented to enter an Order on behalf of [Mother].

Trial Court Opinion, 12/23/15, at 2–4 (record references omitted).

Father raises one issue for our review: "Whether the evidence was sufficient to establish, by a preponderance of the evidence, that [Father] committed abuse under the Protection from Abuse Act?" Father's Brief at 2.[1]

We review the propriety of a PFA order for an abuse of the trial court's discretion or for error in the trial court's legal conclusions. *Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013) (citing *Commonwealth v. Walsh*, 36 A.3d 613, 617 (Pa. Super. 2012)). This Court defers to the trial court's determinations regarding the credibility of witnesses at the hearing.

_____

[1] In his Pa.R.A.P. 1925(b) statement, Father raised a second issue relating to the admission of certain testimony. Father is not pursuing that issue in this appeal. Father's Brief at 2 n.1.

*Ferko-Fox*, 68 A.3d at 928 (citation omitted). When the claim on appeal is that the evidence was insufficient to support an order of protection from abuse, "we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." *Ferri v. Ferri*, 854 A.2d 600, 602 (Pa. Super. 2004) (quoting *Miller on Behalf of Walker v. Walker*, 665 A.2d 1252, 1255 (Pa. Super. 1995)). "[T]he preponderance of evidence standard 'is defined as the greater weight of the evidence, *i.e.,* to tip a scale slightly is the criteria or requirement for preponderance of the evidence.'" *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (citing *Commonwealth v. Brown*, 786 A.2d 961, 968 (Pa. 2001)).

We begin by setting forth the trial court's rationale for determining that a final PFA order against Father was warranted:

> First and most significantly was the admission of the photographic evidence taken by the OCY worker at St. Vincent's Hospital. The photographs showed severe bruising covering much of [Child's] back, legs, and rear-end. This Court rejected as incredible [Father's] testimony [Child] could have been hurt while playing at a birthday party with other children. The bruises were dark in color and covered a large enough area [that] they could not have been the product of normal "child's play." Additionally, there was evidence [Child] was autistic and nonverbal, making it unlikely he possessed the social skills necessary to engage in that type of play with other children.
>
> Second, Mother testified she discovered the bruising on the evening [Child] was returned to her while getting him ready for bed. The length of time [Child] was in [Father's] care, the bruises were discovered after his return to [Mother], and his

evaluation at the hospital create an inference strong enough to meet a preponderance of the evidence standard that the bruising could only have been caused, at a minimum, with [Father's] knowledge or by his direct actions, especially in view of the fact [Child] was not in the care of any other individual other than [Father] while he was away from [Mother].

Trial Court Opinion, 12/23/15, at 5 (record reference omitted).

Father first argues that the PFA order cannot stand because the evidence was insufficient to prove that the injury suffered by Child was "intentionally, knowingly, or recklessly inflicted."  Father's Brief at 5 (citing *Miller on Behalf of Walker*, 665 A.2d at 1258).  Father's citation to *Miller* is not persuasive.  In *Miller*, the trial court concluded that the evidence was sufficient to support a conclusion that child abuse had occurred under 23 Pa.C.S. § 6102(a)(1).  *Miller*, 665 A.2d at 1256.  This subsection defines "abuse" as "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon."  23 Pa. C.S. § 6102(a)(1).  In this matter, however, the trial court indicated that 23 Pa.C.S. § 6102(a)(4), defining abuse as "physically or sexually abusing minor children," was the operative subsection.  Trial Court Opinion, 12/23/15, at 4.  As subsection 6102(a)(4) does not employ the intentional, knowing, or reckless language of subsection 6102(a)(1), Father is advocating an incorrect standard for evaluating his alleged conduct.

Father, however, also contends that the fact that Child sustained an injury does not compel a conclusion that the injury was a result of abuse as defined by the Protection from Abuse Act. To this end, Father avers that the trial court's conclusion that statutory abuse occurred was unreasonable in light of the record evidence. Father particularly assails, in the absence of any medical testimony, the trial court's observation that the bruising could not have resulted "from normal 'child's play'" and its suggestion that Child's autism made it "unlikely he possessed the social skills necessary to engage in that type of play with other children." Father's Brief at 7 (quoting Trial Court Opinion, 12/23/15, at 5).

We do not agree with Father that the trial court abused its discretion in rendering these factual findings. First, the trial court made clear that its abuse determination was reasoned primarily by the "photographic evidence taken by the OCY worker at St. Vincent's Hospital." Trial Court Opinion, 12/23/15, at 5. Second, the trial court's comment that the bruising was not consistent with commonplace child's play was issued in the context of its assessment of Father's credibility, and we accord great deference to its determination in this regard. *Ferko-Fox*, 68 A.3d at 928 (appellate court defers to the trial court's determinations regarding the credibility of witnesses at a PFA hearing). Third, the trial court's mention of Child's inability to socially interact is better characterized as speculation and not as a specific factual finding.

- 6 -

Father's next argument is that the finding that he was the perpetrator of the abuse to Child could not reasonably be inferred from the evidence presented at the hearing. Father asserts that the trial court's conclusion that he was either the abuser or had knowledge of the abuse is based on the unsubstantiated fact that "[Child] was not in the care of any other individual other than [Father] while he was away from [Mother]." Trial Court Opinion, 12/23/15, at 5; Father's Brief at 8–9. While we agree with Father that there was no direct evidence that Child did not have contact with others when he was in Father's care, "not every legal misstep prejudices a defendant to the extent that reversal is necessary." *Commonwealth v. Rickabaugh*, 706 A.2d 826 (Pa. Super. 1997) (citation omitted). In this matter, the timeframe when Child was in Father's care, the discovery of the bruising when Child was returned to Mother, and Child's evaluation at the hospital, reviewed favorably to Mother, create a strong inference that Father either committed or had knowledge of the abuse. This competent evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

We are convinced, however, by Father's argument that a preponderance of the evidence demonstrates that the PFA order should not have issued regarding Child's siblings, L.H. and A.H. While Mother attempted to claim that L.H. and A.H. informed her that they were afraid of

Father, the trial court noted that "[n]o hearsay statement from any [Child] was admitted." Trial Court Opinion, 12/23/15, at 3. Additionally, although the trial court concluded that Mother met her burden that Children were "in imminent danger of bodily and/or emotional harm or had been physically abused by [Father]," it cites no facts supporting this determination relating to L.H. and A.H. other than "[Mother's] testimony, coupled with the pictures of the severe bruising sustained by [Child]." *Id.* at 1, 6. However, the trial court made clear that it did not consider Mother's testimony concerning L.H.'s and A.H.'s fear of Father. *Id.* at 3, 6. The remaining evidence, the photographs of Child's bruising, is not sufficient to tip the scales in Mother's favor to substantiate the entry of the PFA order as to L.H. and A.H. Accordingly, the PFA order is vacated as to L.H. and A.H.

Order affirmed as to Child and vacated as to L.H. and A.H. Jurisdiction relinquished.

Judge Lazarus joins the Memorandum.

P.J. Gantman Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016

- 8 -