**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN WOODSON, | : | |
| | : | |
| Appellant. | : | No. 2419 EDA 2017 |

Appeal from the Judgment of Sentence, June 15, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0001287-2015.

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　　　**FILED JANUARY 10, 2019**

Steven Woodson appeals from an aggregate judgment of sentence of 40 to 80 years' incarceration, after a jury convicted him of attempted rape,[1] aggravated assault,[2] involuntary deviate sexual intercourse,[3] robbery,[4] aggravated indecent assault,[5] and sexual assault.[6] Woodson asserts that (1) the Philadelphia Police Department violated his rights of privacy under both

---

[1] 18 Pa.C.S.A. § 901; 18 Pa.C.S.A. § 3121.

[2] 18 Pa.C.S.A. § 2705.

[3] 18 Pa.C.S.A. § 3123.

[4] 18 Pa.C.S.A. § 3701.

[5] 18 Pa.C.S.A. § 3125.

[6] 18 Pa.C.S.A. § 3124.1.

the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, (2) the trial court improperly instructed the jury regarding identity testimony, and (3) his sentence is excessive. For the reasons below, we affirm.

On New Year's Day 2015, a woman was walking through an open-air parking garage at around 11:00 am. Upon exiting an elevator on one of its higher levels, she encountered Woodson, a total stranger, who greeted her with a hello.

Once her back was turned, Woodson attacked. He covered her mouth and pressed into her back something that felt like a gun. Woodson choked and beat her, to the point that she feared he was going to kill her. She passed out but survived.

The woman regained consciousness while Woodson was still robbing her. Unsurprisingly, she suffered severe pain. She testified, "I remember a gust of air filling my lungs, and I remember feeling vomit and blood at the top of my throat," describing it as a dreamlike state. N.T., 3/2/17, at 12-13.

The woman found herself facedown, between parked cars. She looked over and saw Woodson rummaging through her purse. When she looked up at Woodson's face, he became enraged and resumed savagely beating her. He grabbed her, dragged the woman in front of the parked cars, and pulled clumps of hair from her scalp. He threatened "that he was going to make sure she couldn't see." Trial Court Opinion, 10/2/17, at 2.

Next, Woodson told her to strip. She begged him not to rape her. He sexually assaulted her, vaginally and anally.

Fortunately, Angela and Eric Wilson, a married couple, happened to be driving through that parking garage. As their car passed, the woman escaped Woodson's grasp and ran, naked, into their car.

Woodson fled, and Mr. Wilson gave chase. Mrs. Wilson and the woman waited in the car and called 911.

Dispatch radioed for all officers to be on the lookout for a six-foot-tall, black male, wearing blue jeans, white sneakers, a black jacket, and a black hat with an orange stripe, who was heading northbound on 17th Street. Two or three minutes later, Officer Frank Binns saw Woodson, a six-foot-tall, African-American, walking north on 17th Street, wearing blue jeans and white sneakers. But he had no coat or hat, which was particularly odd, given that it was a chilly January morning.

Suspicious, Officer Binns stopped Woodson for questioning. The suspect couldn't get his story straight. First, he said he was *coming from* a nearby hospital. Then, he changed his story; he was *going* to it. Plus, Woodson had no identification and provided the police with two fake names. While searching their database for his aliases, the officers received additional information by radio that the assailant had a "scruffy beard." N.T., 3/1/17, at 12. Woodson had matching facial hair. Moreover, investigators soon recovered the black jacket and black-and-orange hat, both abandoned behind some shrubbery, about 25 feet away.

Next, police brought Eric Wilson to see if he could identify Woodson as the attacker. Mr. Wilson was "not sure." N.T., 3/1/17, 14, 24. They also brought the woman, now riding in a squad car, down and asked her to identify Woodson. She refused to look at him, because of her physical and emotional pain. Instead, the woman insisted the officers take her to the hospital. They obliged.

Officer Binns arrested Woodson on suspicion of the assault, attempted rape, and robbery and to identify him accurately. Before leaving the scene, the policeman searched Woodson's person and removed two credit cards. He placed them into an opaque, plastic bag.

After Woodson arrived at the police station, investigators determined his true name. Also, Special Victims' Unit ("SVU") Detective Brian Meissler opened the plastic bag to see who owned the credit cards. One of them bore the woman's name.

About a month later, after she was out of the hospital, the woman went to the jail for a line-up. She immediately identified Woodson as her attacker.

Before trial, Woodson moved to suppress the woman's credit card. A suppression hearing occurred; the court, finding no constitutional violation, admitted the woman's credit card into evidence; and the jury convicted.

The trial court imposed an aggregate sentence of 40 to 80 years of incarceration and denied a post-sentence motion. Woodson timely appealed.

He raises three issues in his brief. First, he claims the trial court abused its discretion by not giving a jury instruction on eyewitness identification under

*Commonwealth v. Kloiber*, 106 A.2d 850 (Pa. 1954). *See* Woodson's Brief at 6. Second, Woodson asserts Detective Meissler violated his constitutional rights when he opened the opaque, plastic bag to read the names on the credit cards that the police had taken at the time of arrest. *Id.* Third, he asks this Court to review the discretionary aspects of the sentence that the trial judge imposed; he believes that sentence is excessive. *Id.* at 7. We shall address his second issue first, which will render his first issue moot. We will deny the request to review the discretionary aspects of his sentence.

Woodson believes the Philadelphia Police Department lacked probable cause to take him into custody, and, therefore, Detective Meissler had no constitutional authority to open the opaque, plastic bag and read the names on the two credit cards. *Id.* at 48. He claims that he was in a custody from the moment Officer Binns first approached him on 17th Street, but the trial court only found reasonable suspicion at that juncture – a constitutionally insufficient quantum of suspicion to justify a custodial detention. *Id.* In the alternative, he argues that, if we find the initial interaction between Officer Binns and him to have been an investigative stop, then subsequent events dispelled any prior reasonable suspicion that he was the attempted rapist. *Id.* Thus, under both scenarios, Woodson asserts that the police had no grounds to take him to their station house, seize the two credit cards, and read the names on them.

The Commonwealth thoroughly rebuts Woodson's theory in its brief:

Following the denial of a suppression motion, a reviewing court must consider the prosecution evidence at the suppression hearing, and so much the evidence for the defense, as when fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Smith*, 836 A.2d 5, 10 (Pa. 2003). The record must be viewed in the light most favorable to the Commonwealth as the prevailing party. *Commonwealth v. Rickabaugh*, 706 A.2d 826, 833 (Pa. Super. 1997). Where the suppression court's factual findings are supported by the record, a reviewing court may reverse only if the suppression court's legal conclusions are erroneous and there is no other legitimate basis for admitting the challenged evidence. *Commonwealth v. Laatsch*, 661 A.2d 1365, 1367 (Pa. 1995). Under this standard, [Woodson] cannot prevail.

. . . After [Woodson] was taken into custody, officers placed credit cards that were recovered from his person inside a storage bag for safekeeping. That bag was later opened by a detective after [Woodson] was identified as wanted on an outstanding bench warrant. Obviously, [Woodson] had no privacy interest in a bag that the police themselves had supplied. Thus, [his] challenge to the detective's act of removing the bag is fundamentally misguided. *Cf. Commonwealth v. Hall*, 554 A.2d 919, 921-22 (Pa. Super. 1989) (no warrant is necessary when, at the police station, officers inspect items that were previously seized at the time of arrest) . . .

Seizures are classified as investigative detentions (which require only a reasonable suspicion that criminal activity is afoot) and custodial detentions (which require probable cause). E.g., *Commonwealth v. Bennett*, 827 A.2d 469, 477 (Pa. Super. 2003). Here, upon initially encountering [Woodson], the police acted appropriately by detaining him for a brief period in order to conduct an investigation. Moreover, prior to taking him into custody, they obtained additional information that supplied the requisite probable cause to arrest him.

Officer Frank Binns received a radio bulletin based on information from a named civilian witness. It reported a rape by a six foot tall black male in blue jeans and white sneakers with a black jacket and a black hat with an orange

stripe. It also specified that the perpetrator was fleeing northbound from Callowhill Street, on 17th Street.

Within three minutes, Officer Binns observed [Woodson] proceeding northbound a short distance away on 17th Street. He was the only person on the street and fit the broadcast description – except that he was not wearing a coat or hat. The absence of outer clothing was particularly noteworthy given that it was a very cold day in January. Thus, the officers could not ignore that defendant may have abandoned his outer wear while on the run in an effort to avoid detection. *See In the Interest of D.M.*, 727 A.2d 556, 558 (Pa. 1999) (upholding stop based on general description close to time and place of crime reported by civilian witness); *Commonwealth v. Sheridan*, 437 A.2d 44, 46 (Pa. Super. 1981) (upholding stop although suspect was not wearing a hat or the same type of coat reported in a radio bulletin).

What happened next only increased the officer's concern. [Woodson] first told the police that he was *coming from* Hahnemann Hospital. Then he switched gears and said he was *going to* Hahnemann Hopital. When asked for identification, [Woodson] (who was in his thirties) claimed that he had "never had an ID as an adult" and provided two different inconsistent names. Meanwhile, police received a supplemental radio report that the perpetrator had a "scruffy beard;" sure enough, defendant had a scruffy beard as well. Additionally, they learned that the missing black jacket and black hat with an orange stripe had been recovered approximately 25 feet from where defendant had been sighted.

"[R]esponses by the suspect which the officer knows to be false, or which are implausible, conflicting, evasive, or unresponsive may well constitute probable cause when considered together with [the officer's] prior suspicions." 3 W. LaFave, Search and Seizure, § 3.6(f) at 449-50 (5th ed. 2012) (footnotes with case citations omitted). That was the case here. *See Commonwealth v. Norris*, 499 A.2d 644, 646 (Pa. Super. 1985) (combination of furtive conduct and resemblance to description of perpetrator triggered probable cause). *See generally Commonwealth v. Thompson*, 985 A.2d 928, 940-41 (Pa. 2009) (probable cause deals with the factual and practical considerations of

everyday life upon which reasonable and prudent men act); ***Commonwealth v. Quiles***, 619 A.2d 291, 298 (Pa. Super. 1993) (*en banc*) ("Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference").

[Woodson] emphasizes that an eyewitness – apparently, Good Samaritan, Eric Wilson – failed to identify him upon being brought to the scene. That witness simply stated, however, that he was "not sure" whether or not defendant was the person who had fled after assaulting [the survivor]. This remark was in no way exculpatory; it did not negate the probable cause that had arisen from other factors.

[Woodson] also notes that Officer Binns referred to taking him into custody to find out "who he was." The officer clarified, however, that he believed he could be "the doer for the rape in progress." In any event, the legality of a search or seizure is measured by an objective test and does not depend on the officer's subjective motivations or state of mind. ***Commonwealth v. Foglia***, 979 A.2d 357, 362 (Pa. Super. 2009) (*en banc*).

In sum, the totality of the circumstances supplied probable cause to believe that defendant was implicated in the assault. Therefore, he could be arrested and searched incident to arrest. ***Commonwealth v. Rickabaugh***, 706 A.2d at 836. It follows that the credit cards on his person – one of which bore the [survivor's] name – were lawfully recovered.[7]

Commonwealth's Brief at 10-14 (emphasis and footnote in original; citations

to the record omitted).

We agree with the Commonwealth's well-reasoned arguments above

and adopt them as the analysis of this Court. Thus, we affirm the trial court's

---

[7] Moreover, after apprehending [Woodson], police learned that he had an outstanding bench warrant for indecent exposure. N.T., 3/1/17, 30***. See Utah v. Strieff***, ____ U.S. ____, 136 S.Ct. 2056 (2016) (taint from illegal seizure was too attenuated to support the exclusion of evidence once police learned that the suspect had an outstanding arrest warrant) . . . .

order denying suppression of the survivor's credit card, which Woodson had in his possession only a few minutes after the crimes were committed.

Because the Commonwealth showed that damning evidence to the jury on the last day of trial, we need not reach the merits of Woodson's first appellate issue – *i.e.*, whether the trial court should have given the **Koilber** instruction he requested. Even if we were to agree with Woodson, the error was harmless, because his possession of the survivor's credit card, standing alone, clearly identified him as the perpetrator.

The only explanation for him having the survivor's credit card is obvious: he is guilty beyond any reasonable doubt. The Commonwealth could have tried and won this case *without* the survivor identifying Woodson. Therefore, we decline to decide his first claim of error, because it would not merit a new trial, regardless of how we might rule. We thus dismiss Woodson's first issue as moot.

Lastly, we deny Woodson's application for allowance of appellate review of the discretionary aspects of sentencing, because he has failed to raise a substantial question.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect,

> Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b). **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006).

**Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011). In this instance, there is no question that Woodson has satisfied prongs one through three of the test for invoking our appellate jurisdiction. We therefore proceed directly to the fourth prong: whether Woodson has presented a substantial question.

Woodson argues that the trial court imposed a "*de facto* life sentence" that "is excessive under the circumstances. The sentence imposed in this matter is thus contrary to the fundamental norms which underlie the sentencing process, and inconsistent with the Sentencing Code." Woodson's Brief at 55. However, Woodson's statements in this regard are conclusory and fail to explain what portion of the Sentencing Code with which the sentence was inconsistent or how it ran contrary to sentencing norms.

He goes on to say that the "failure to consider mitigating factors, failure to address the rehabilitative needs of Mr. Woodson, and fact that the sentences are ordered to be served consecutively despite the fact that they occurred simultaneously, raises a substantial question that this sentence which will incarcerate Mr. Woodson for a the remainder of this natural life (*i.e.*, until age 135) is a deviation from sentencing norms." **Id.** He cites no case law to support those statements.

This Court has previously held that such unsubstantiated protestations are not substantial questions:

> It is settled that this Court does not accept bald assertions of sentencing errors. ***See Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Commonwealth v. Ahmad***, 961 A.2d 884, 886–87 (Pa. Super. 2008) (quoting ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005)). A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law[.]" ***Commonwealth v. Bullock***, 868 A.2d 516, 528 (Pa. Super. 2005) (citation omitted).
>
> Here, Appellant asserts in his Rule 2119(f) statement:
>
> [T]he [trial] court imposed both aggravated range sentences and standard guideline range sentences. It ordered that each sentence, twelve in total, run consecutive to one another. As a result, the aggregate minimum judgment of sentence was over eleven years. At the time the trial court imposed its amended sentencing order, [Appellant] was seventy years of age. The trial court's sentence is in effect a de facto life sentence on an individual who cannot pose any threat to society due to both the loss of his license and his age.
>
> Appellant's Brief at 27.  Based on Appellant's 2119(f) statement, we conclude that he has failed to raise a substantial question.
>
> Appellant's excessiveness claim is premised on his argument that the trial court imposed consecutive sentences and failed to consider his mitigating circumstances, such as his age and loss of license. Specifically, Appellant claims that, because the trial court ordered his sentences to run consecutively, his aggregate sentence of 133 to 266 months in prison was excessive.  We

- 11 -

consistently have recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (stating, "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015); *see also Commonwealth v. Ahmad*, 961 A.2d 884, 887 n.7 (Pa. Super. 2008); *Commonwealth v. Pass*, 914 A.2d 442, 446–47 (Pa. Super. 2006). Additionally, Appellant claims that the trial court failed to consider his mitigating circumstances, specifically his "advanced" age of over seventy years. Appellant's Brief at 50. In *Commonwealth v. Eline*, 940 A.2d 421 (Pa. Super. 2007), we concluded that an appellant's argument that "the trial court failed to give adequate consideration to [his] poor health and advanced age" in fashioning his sentence does not raise a substantial question. *Eline*, 940 A.2d at 435. In so concluding, we explained that "[t]his court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Id.* (citation omitted); *see Commonwealth v. Disalvo*, 70 A.3d 900 (Pa. Super. 2013) (citations omitted) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."); *see also Commonwealth v. Berry*, 785 A.2d 994 (Pa. Super. 2001) (explaining allegation that sentencing court failed to consider certain mitigating factor generally does not raise a substantial question); *Commonwealth v. Cruz–Centeno*, 447 Pa.Super. 98, 668 A.2d 536, 545 (1995) ("[a]n allegation that a sentencing [judge] 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate,"), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996); *Commonwealth v. Bershad*, 693 A.2d 1303, 1309 (Pa. Super. 1997) (finding absence of substantial question where appellant argued the trial court failed to adequately consider mitigating factors and to impose an individualized sentence). Consistent with the foregoing cases, we conclude that Appellant failed to raise a substantial question with respect to his excessiveness claim

premised on the imposition of consecutive sentences and inadequate consideration of mitigating factors.

***Commonwealth v. Radecki***, 180 A.3d 441, 468-469 (Pa. Super. 2018).

Applying ***Radecki***, we decline to assert appellate jurisdiction over the discretionary aspects of the sentence, because Woodson's Pa.R.A.P. 2119(f) statement does not demonstrate a substantial question for our review. Thus, we will not address the merits of this third and final claim of error.

Judgment of sentence affirmed.

Judge Bowes concurs in the result.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/19