J-A09029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                    :            PENNSYLVANIA
                    :

            v.                :
                    :
                    :

TYREE MUSIER               :
                    :

        Appellant       :    No. 617 EDA 2021

Appeal from the PCRA Order Entered February 25, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015455-2008

BEFORE:   NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:            **FILED AUGUST 9, 2022**

Tyree Musier ("Musier") appeals from the order dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

We summarize the relevant factual and procedural history of this case as follows.  In the early morning hours in June 2008, Musier, Jonte Slater ("Slater"), and a third man drove to the intersection of 39th and Market Street. Musier and Slater exited the vehicle and spoke to Latasha Austin ("Austin") and another woman.  The victim, Nathaniel Crawford ("Crawford"), arrived and spoke to the men.  Musier, who was wearing a green shirt, pulled out a gun and shot Crawford four times, killing him.  Musier and Slater got back in

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

the vehicle and sped away. Responding police officers gave chase, during which, one officer saw the front seat passenger drop something out of the window, which another officer later discovered was the .40 caliber handgun used in the shooting.[2] After stopping the vehicle, officers found Musier sitting in the front passenger seat and Slater in the driver's seat. Police also recovered from the center console a green shirt.[3] Police interviewed Austin shortly after and asked her who the shooter was; she pointed to Musier. Austin described him in a police statement as being heavyset and wearing a green shirt. Austin also identified Musier as the shooter at his preliminary hearing. **See Commonwealth v. Musier**, 106 A.3d 159 (Pa. Super. 2014) (unpublished memorandum at *1–*4) (quoting Trial Court Opinion, 11/14/13 at 3-8).[4]

_____

[2] Ballistics testing linked the handgun to cartridges recovered from the scene of the shooting. Bullet fragments recovered by a medical examiner during Crawford's autopsy were consistent with being fired from that gun, though subsequent DNA testing failed to link Musier to the gun.

[3] Forensic testing of the shirt revealed there was primer gunshot residue on it. DNA testing linked Slater to the collar of the green shirt and excluded Musier; neither Slater nor Musier could be excluded as contributors of DNA around the neck area of the shirt.

[4] Another eyewitness, Terrell Lewis, had been selling drugs with Crawford and witnessed the shooting. In a statement to police, he falsely identified himself as "Antoine Robinson," but identified Musier as the man wearing the green shirt who shot Crawford. At trial, Lewis admitted to giving a false name to police, and while he agreed that the person in the green shirt shot Crawford, he refused to identify Musier as the person in the green shirt and denied previously identifying Musier to police. **See, e.g.**, N.T., 4/18/12, at 105-06,
*(Footnote Continued Next Page)*

The trial court issued a pre-trial order precluding the Commonwealth from introducing any evidence of threats against Austin because the Commonwealth failed to include this information in discovery. **See** N.T., 2/6/12, at 79-81, 85-86. At trial, the Commonwealth called Austin, and she recanted her prior identifications of Musier, implicated Slater as the shooter, and asserted that she had previously identified Musier as the shooter because she was afraid of Slater.[5] **See** N.T., 4/19/12, at 14. On cross-examination of Austin, Musier's counsel ("trial counsel") elicited evidence of threats against Austin, notwithstanding the pre-trial ruling. Specifically, trial counsel elicited on cross-examination that Austin previously identified Musier because she felt threatened by Slater's friends and family, though no one had communicated any threats to her. **See id**. at 33-34. She further claimed that she had not known Musier, and no one had approached her on his behalf. **See id**.

In light of this cross-examination, the Commonwealth argued, and the trial court agreed, that trial counsel opened the door to additional testimony concerning threats Austin had received. **See id.** at 73-75. The Commonwealth then asked Austin on re-direct whether, three days after the preliminary hearing, she contacted police about threats she had received from

_____

120-21, 127-28, 152. Police, after recovering the shirt, discerned that it would fit Musier but that it was too large for the other passengers. **See** N.T., 4/23/12, at 9, 20-23.

[5] Slater died before Musier's trial.

- 3 -

an unknown woman whom she believed was acting on Musier's behalf. *See id*. at 84. Austin testified she had no recollection of this. *See id*.; *accord id*. at 87 (Austin testifying that no one had made verbal threats to her about testifying in court). The Commonwealth also called Austin's mother, Gail Mary Jones ("Jones"), to testify that Austin told her after the preliminary hearing that she had been "threatened by the guy that she was testifying against at that particular time by some girl or something like that. I never seen no girls or nothing. And she never talked about it anymore." *Id*. at 148.

Following trial, the jury convicted Musier of first-degree murder[6] and related offenses. The trial court sentenced him to an aggregate term of life imprisonment. This Court affirmed on direct appeal. *See Musier*, 106 A.3d 159 (unpublished memorandum at *8). Our Supreme Court denied Musier's petition for allowance of appeal on April 1, 2015. *See Commonwealth v. Musier*, 113 A.3d 279 (Pa. 2015).

Musier filed a timely *pro se* PCRA petition on April 21, 2015, followed by a counseled amended petition in September 2017. The Commonwealth moved for dismissal, and in August 2019, the PCRA court issued a notice of intent to dismiss Musier's petition without a hearing pursuant to Pa.R.Crim.P. 907. In January 2021, following several extensions of time, Musier filed a

_____

[6] *See* 18 Pa.C.S.A. § 2502(a).

response to the court's Rule 907 notice.[7]  The PCRA court dismissed Musier's petition on February 25, 2021.  Musier timely appealed.[8]  Both Musier and the PCRA court complied with Pa.R.A.P. 1925.

Musier raises the following issue for our review:

> Did the PCRA [court] err by denying [Musier's] claim of trial counsel's ineffectiveness for pursuing a line of questioning that opened the door for the Commonwealth to admit previously precluded evidence regarding threats to Commonwealth witness Latasha Austin?

Musier's Brief at 6.[9]

Our standard of review is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level.  This review is limited to the findings of the PCRA court and the evidence of record.  We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.  This Court may affirm a PCRA court's decision on any ground if the record supports it.  Further, we grant great deference to the

_____

[7] While the certified record does not appear to contain the Rule 907 notice, Musier's counsel indicated receipt of the notice, moved for several extensions, and then filed a response, as noted **supra**.

[8] Musier also moved for appointment of new counsel.  **See** Motion, 6/29/21.  Musier's counsel also moved to withdraw, explaining that he had been privately retained for proceedings before the PCRA court, but not for the PCRA appeal.  **See** Motion to Withdraw, 7/27/21.  The PCRA court granted both motions and appointed new counsel.  **See** Order, 8/3/21.

[9] Musier raised three additional issues in his 1925(b) statement but has elected not to pursue them on appeal.  **See** Musier's Brief at 13.  Therefore, we decline to address these abandoned issues.  **See Commonwealth v. Pacheco**, 263 A.3d 626, 649 n.23 (Pa. 2021) (noting that "[i]t is well-settled that where a claim has been presented to the trial court, but abandoned on appeal, [an appellate court] should not pass upon it[,] because failure to pursue an issue on appeal is just as effective a forfeiture as is the failure to initially raise the issue.") (internal brackets, quotations, and citation omitted).

factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Further, to prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. *See Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Musier argues that trial counsel was ineffective for questioning Austin about whether she had received threats about her testimony, because that line of questioning "open[ed] the door for redirect examination on this central issue by the Commonwealth." Musier's Brief at 11. He argues trial counsel had no reasonable basis for "soliciting questions related to any real or

perceived threats against . . . Austin[,] knowing that the Commonwealth was prepared to rebut that testimony . . . with a line of questioning that had been previously excluded." *Id*. at 11-12 (citing N.T., 4/19/12, at 85-86). According to Musier, once the jury heard Austin had been threatened, the "only reasonable conclusion" for the jury to draw was that Musier was the one who had threatened her, thereby causing her recantation. *Id*. at 12. This, he maintains, was prejudicial "[g]iven the dearth of evidence linking [him] to the homicide . . .." *Id*.

The PCRA court considered Musier's claim and concluded he was due no relief because he failed to satisfy the prejudice prong of the ineffectiveness test because "substantial circumstantial evidence supported the verdict," the only evidence of threats against Austin was Jones's "equivocal testimony," and the jury could properly weigh Jones's testimony against Austin's.[10] PCRA Court Opinion, 9/10/21, at 9.[11]

_____

[10] Musier does not argue on appeal that Jones's testimony about threats to Austin resulted in prejudice. *See* Musier's Brief at 11-13. He has thus waived this issue. *See Commonwealth v. Gilbert*, 269 A.3d 601, 612 (Pa. Super. 2022) ("An appellant's failure to properly develop an argument with citations to the relevant portions of the record will result in the waiver of his appellate claims"). Even if preserved, this claim would merit no relief given the PCRA court's conclusion that Jones's testimony was equivocal and that there was substantial circumstantial evidence of his guilt. *See* PCRA Court Opinion, 9/10/21, at 9.

[11] The PCRA court also determined trial counsel had a reasonable basis for the line of questioning he pursued with Austin, given Austin stated she felt threatened by associates of Slater, not Musier. *See id*. at 9.

Based on our review, we determine the PCRA court's conclusions are supported by the record and free of legal error. The PCRA court correctly concluded that Musier failed to satisfy the prejudice prong of the ineffectiveness test. On redirect, Austin did not testify that Musier threatened her; and she denied she had ever said that Musier—or anyone on Musier's behalf—had threatened her. *See* N.T., 4/19/21, at 85-86. Thus, the evidence Musier complains was prejudicial, namely, Austin's testimony on redirect, did not show that Musier, or his associate, threatened Austin, and, consequently, there is no reasonable probability of a different outcome at trial absent this testimony. Musier failed to show prejudice, and his claim therefore merits no relief.

We additionally discern no error in the PCRA court's conclusion that the evidence of the threats did not affect the outcome at trial because there was substantial circumstantial evidence supporting the verdict. Austin had twice previously identified Musier as the person in the green shirt who shot Crawford. Lewis previously identified Musier as the shooter in the green shirt, and while he did not identify Musier at trial, he agreed with his prior description of the shooter as wearing a green shirt. Police apprehended Musier in the vehicle that fled from the scene of the shooting, and Musier was sitting in the passenger seat of the vehicle, while the murder weapon was tossed from the front passenger window of the fleeing vehicle. Musier could not be excluded as a contributor to DNA tested on the green shirt that also contained gunshot residue and that was too large for Slater, but an appropriate size for Musier.

- 8 -

Based on this circumstantial evidence supporting Austin's and Crawford's prior identifications of Musier, the testimony regarding the threats to Austin did not affect the outcome of trial. ***See Commonwealth v. Rickabaugh***, 706 A.2d 826, 839 (Pa. Super. 1997) (holding that erroneously admitted evidence of threats to a witness by the criminal defendant could not "reasonably be said to have contributed to the verdict" where the Commonwealth's case did not hinge on the witness's testimony, even though it was "undoubtedly . . . important") (internal citation omitted). Accordingly, Musier is due no relief.[12]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2022

---

[12] As we affirm the PCRA court based on its determination that Musier failed to plead prejudice, we need not reach the question of whether it properly concluded that Musier failed to show trial counsel lacked a reasonable basis for his actions. ***See Martin***, 5 A.3d at 183 (a petitioner's failure to satisfy any prong of the ineffectiveness test is fatal to his claim).